No. 48,644

BERT L. GILLIG, *Appellee*, v. CITIES SERVICE GAS COMPANY, a Corporation, *Appellant.*

(564 P.2d 548)

Opinion filed May 14, 1977.

*Robert A. Pool*, of Oklahoma City, Oklahoma, argued the cause, and *Richard N. Raleigh*, of McGregor & Raleigh, of Medicine Lodge, was with him on the brief for the appellant.

*Gordon Penny*, of Chapin & Penny, of Medicine Lodge, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an appeal from a judgment of a district court in a workmen's compensation case awarding compensation to Bert L. Gillig for 10% loss of use of his right leg plus medical expenses incurred by reason of a torn medial cartilage in his right knee.

It was stipulated by and between the parties: (1) That claimant Gillig met with personal injury on January 25, 1973; (2) that claimant's accidental injury arose out of and in the course of his employment with Cities Service Gas Company; (3) that claimant gave proper notice; (4) that the relationship of employer and employee existed; (5) that the parties are covered by the Kansas Workmen's Compensation Act; and (6) that respondent is a self-

insured. The amount of claimant's average weekly wage and the amounts paid by respondent for medical and hospital expenses in 1973 were further stipulated.

The injury was received in January, 1973, while claimant was engaged in carrying pipe. Claimant was first treated by a Dr. Christensen and fluid was drained from claimant's knee. He was then referred to an orthopedic surgeon, Dr. H. O. Marsh, who examined the injured knee and released claimant for regular duty. Claimant returned to work five days after his injury and respondent paid the medical and hospital expenses incurred in making the examination and treating the injury.

Claimant resumed his normal duties and continued to work for respondent until August, 1973, at which time he resigned and left the respondent's employment. Since that time claimant has engaged in farming and ranching.

In March, 1975, claimant twisted his right knee while stepping from a tractor and experienced some pain. This was not an unusual occurrence. Later that same evening while sitting in a chair he shifted his position to glance at someone on television and the knee locked on him. He was taken to Dr. H. O. Marsh and underwent surgery for repair of the knee and removal of the medial cartilage.

The claimant testified that when Dr. Marsh examined his knee in 1973 the doctor said he did not think the knee cartilage was torn and if it was torn he did not think it was bad enough to warrant surgery. From that time until the knee locked in 1975 claimant continued to experience pain and a grinding sensation in his right knee. He further testified to the extent of his disability after the surgery was performed in 1975.

Dr. Marsh testified concerning his examination of the claimant in 1973, and stated that he thought he failed to make a proper diagnosis on the tearing of the cartilage. He further testified that once a knee cartilage is torn it will not heal because the cartilage has no blood supply and no way of healing. As to the examination and surgery performed on claimant in 1975, Dr. Marsh stated he found considerable effusion in the knee and that the range of motion was from 20 to 90 degrees. Claimant could not at that time straighten his knee. Dr. Marsh made a diagnosis of torn medial cartilage, performed the surgery, repaired the knee and removed the cartilage. He testified as to the cause and extent of claimant's present disability as follows:

"As a result of the injury and operation suffered by Mr. Gillig, I am of the opinion that he would have suffered a maximum of 10 percent loss of use to the leg. I'm also of the opinion that, based upon the history given to me by Mr. Gillig in March of 1975 that his knee was never right following a 1973 injury, that the injury of 1973 was the injury that necessitated this surgery in 1975."

Dr. Roy E. Camp, another orthopedic surgeon, testified that he had examined claimant after the surgery was performed in 1975. He testified as follows:

". . . I took X-rays of Mr. Gillig's knee and found that they were within normal limits. I felt that Mr. Gillig had, for one, surgical absence of the medial knee cartilage, and two, that he had an old injury to the medial knee ligament which resulted in some looseness or instability, an old injury to the anterior cruciate ligament resulting in some instability and the combination of the above three problems led to the mild rotatory instability that he had. I would rate Mr. Gillig as having a 20 percent partial permanent disability in regard to loss of use of the right lower extremity.

. . . . . . . . . . . . . . . . .

" . . . [I]t is based upon a judgment as to how well he can perform hard manual labor, not necessarily farming. Irrespective of what occupation Mr. Gillig is employed in, I would still rate him at 20 percent loss of use and that is based upon his ability to perform manual labor if he were ever called upon to perform that.

". . . I base my opinion that Mr. Gillig's surgery was the result of the injury he sustained in 1973 and not from an injury he sustained in 1975 due to the fact that after the 1975 occurrence he had no swelling of the knee joint. . . . I must conclude that his injury and resulting surgery were the result of the 1973 incident."

The respondent-appellant contends that claimant did not suffer a compensable injury in 1973 because he was not off work for at least a week as required by K.S.A. 44-501 (a). We have held otherwise.

A workman who suffers an injury actually resulting in permanent partial disability may maintain a claim for such disability even though he returns to work within the week after said injury regardless of the one-week provision contained in K.S.A. 44-501 (a). The case of *Alexander v. Chrysler Motor Parts Corp.*, 167 Kan. 711, 207 P. 2d 1179, supports this holding. It contains a thorough discussion and analysis of the statute and the purpose of this particular provision. The discussion need not be repeated here. See also *Shepherd v. Gas Service Co.*, 186 Kan. 699, 703, 352 P. 2d 48, where the rule in *Alexander* was later approved.

Appellant next contends that the surgery and resulting disability were caused by claimant's subsequent farming activities which constituted an intervening cause of the disability and that the disability suffered was not the direct and natural consequence of the 1973 injury.

When a primary injury under the Workmen's Compensation Act arises out of and in the course of employment every natural consequence that flows from the injury is compensable if it is a direct and natural result of the primary injury. (*Reese v. Gas Engineering & Constru .tion Co.*, 219 Kan. 536, 541, 548 P. 2d 746; *Jackson v. Stevens Well Service*, 208 Kan. 637, Syl. 1, 493 P. 2d 264.)

The district court found:

" . . . [B]ased upon the medical testimony in this case, that the original injury suffered by claimant on January 25, 1973 and which is admitted by the respondent, was ultimately responsible for the surgery to claimant's knee and the present disability to claimant's leg. The uncontroverted medical testimony ties together the original injury with the re-injury or aggravation of the original knee injury and the resulting need for surgery."

There was evidence in the record sufficient to support such a finding.

Appellant's final contention is that claimant's disability was the result of a new or second injury occurring in non-covered employment. The district court found otherwise and our examination of the evidence indicates that the court's finding is supported by substantial competent evidence. The scope of this court's appellate review in workmen's compensation cases was stated and applied in *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 262, 505 P. 2d 697. The fact that the trial court arrived at an opposite conclusion in *Stockman* in a somewhat similar situation does not change the limitation upon appellate review. When the trial court's factual findings are supported by substantial evidence, as in the present case, they must be accepted by the appellate court.

The matters raised by respondent on appeal are largely questions of fact. The testimony of the two doctors supports the findings of the trial court and the findings of the court support the claimant's award.

The judgment is affirmed.