(648 P.2d 265)

No. 53,640

PAUL E. GRABER and NORMA J. GRABER, *Appellants,* v. CROSSROADS COOPERATIVE ASSOCIATION, GOESSEL, KANSAS, *Appellee.*

Petition for review denied September 17, 1982.

Opinion filed July 22, 1982.

*James P. Johnston,* of Johnston & Johnston, P.A., of Wichita, for appellants.

*Alan L. Rupe,* of Kahrs, Nelson, Fanning, Hite & Kellogg, of Wichita, for appellee.

Before FOTH, C.J., REES and MEYER, JJ.

MEYER, J.: Paul E. Graber and Norma J. Graber (appellants) brought this personal injury action against appellant Paul E. Graber's former employer. Paul E. Graber suffered an initial back injury while working for Crossroads Cooperative Association (appellee). At the time of the injury giving rise to this lawsuit, Paul E. Graber's initial back injury had been subjected to surgery and fusion, and prior to the instant injury the back had healed and the fusion had solidified. Appellant Paul E. Graber's injury for which he now brings suit occurred after the healing aforementioned and after he had left appellee's employ. While on his former employer's premises, on personal business, he slipped, caught himself, and broke part of the fusion. The problem arises when we consider that had the first injury not occurred, there would have been no fusion to break; whereas had the slipping not occurred, the fusion would not have broken.

Following the taking of depositions and the answering of interrogatories, appellee filed a motion for summary judgment, alleging appellant Paul E. Graber's claims were barred by the

exclusive remedy provisions of the Kansas workmen's compensation act. The trial court granted summary judgment in favor of appellee and found that the second injury to Graber's back was a direct and natural result of the first injury which, because it was compensable under the Kansas workmen's compensation act, would now bar appellant Paul E. Graber by the exclusive remedies provisions of that act. The trial court thus concluded that the claims of both Grabers were now barred.

The sole issue before us on appeal is whether the second injury was a direct and natural consequence of the first occupational injury.

The direct and natural consequences doctrine in workmen's compensation cases arose from factual situations in which a disability occurred which was related to, but distinct from, a scheduled injury disability. In the case of *Jackson v. Stevens Well Service,* 208 Kan. 637, 493 P.2d 264 (1972), the Supreme Court held that bicipital tendonitis of claimant's right shoulder and atrophy of his right arm were the direct and natural result of traumatic partial amputations of fingers on his right hand. The court stated:

"We find that when a primary injury under the Workmen's Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable *if it is a direct and natural result of a primary injury.*" (Emphasis added.) 208 Kan. at 643.

The court followed *Jackson* in *Berger v. Hahner, Foreman & Cale, Inc.,* 211 Kan. 541, 506 P.2d 1175 (1973) (allowing recovery for traumatic neurosis traceable to an eye injury); *Bergemann v. North Central Foundry, Inc.,* 215 Kan. 685, 527 P.2d 1044 (1974) (allowing recovery for back strain developed after the crushing and partial amputation of claimant's right foot); *Reese v. Gas Engineering & Construction Co.,* 219 Kan. 536, 548 P.2d 746 (1976) (allowing recovery for back strain caused by claimant's limping after having both left lower leg bones broken); and *Chinn v. Gay & Taylor, Inc.,* 219 Kan. 196, 547 P.2d 751 (1976) (allowing recovery for back strain caused by limping after a knee injury). *In each of these cases the second disability progressively developed in relation to the original injury. No new accident or separate trauma occurred.*

The scope of *Jackson* was narrowed one year later in *Stockman*

*v. Goodyear Tire & Rubber Co.,* 211 Kan. 260, 505 P.2d 697 (1973). Claimant sprained his back on the job. The day after he was released to return to work he strained his back at home. The Supreme Court reviewed the evidence and found substantial evidence to support the trial court's finding of fact that the second injury was a new and separate accidental injury. Justice Owsley wrote:

"The rule in *Jackson* is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in the instant case. The rule in *Jackson* would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, *but not when the increased disability resulted from a new and separate accident."* (Emphasis added.) 211 Kan. at 263.

Defendant contends that *Billig v. Cities Service Gas Co.,* 222 Kan. 369, 564 P.2d 548 (1977), disapproved or ignored *Stockman.* Gillig sustained a knee injury in January 1973. Fluid was drained but no surgery was performed. In March 1975, Gillig twisted his knee while stepping off a tractor and experienced pain, a not unusual occurrence. Later in the evening his knee locked. Surgery was necessary to remove a torn cartilage which had not healed from the 1973 injury. The 1975 disability was found to be a direct and natural consequence of the 1973 injury. *Claimant's knee had never healed.* The court notes the factual situation was somewhat similar to *Stockman* but that the trial court arrived at an opposite conclusion. The court concluded there was sufficient evidence to support the trial court's findings. Although somewhat similar, *Stockman* did involve back sprain which had subsided; whereas, *Gillig* involved a torn knee cartilage which never healed. *Stockman* had a distinct reinjury, but *Gillig* experienced continuing aggravation which culminated in a total functional failure.

In *Makalous v. Kansas State Highway Commission,* 222 Kan. 477, 565 P.2d 254 (1977), the court followed *Gillig* and allowed compensation for a myocardial infarction suffered ten weeks after an intimal hemorrhage occurring on the job. As in *Gillig,* claimant suffered a continuing disability which culminated in severe symptomatology.

In the instant case, the slip was a distinct trauma-inducing event out of the ordinary pattern of life and not a mere aggravation of a weakened back. As a matter of law, the trial court erred in finding the second injury was a direct and natural consequence of

the first injury. *Gillig* and *Makalous* are thus distinguishable from the instant case, and the trial court erred in granting summary judgment.

Reversed.