No. 59,615

LARRY J. BAXTER, *Appellant*, v. L. T. WALLS CONSTRUCTION COM-
PANY, *Appellee* and *Cross-Appellant*, and KANSAS WORKERS'
COMPENSATION FUND *Cross-Appellee*.

(738 P.2d 445)

Opinion filed June 12, 1987.

*Thomas Brooks*, of Thomas Brooks Chartered, of Overland Park, argued the cause and was on the brief for appellant.

*Arthur W. Douville*, of Overland Park, argued the cause and was on the brief for appellee and cross-appellant.

*J. Paul Maurin, III*, of Kansas City, argued the cause, and *Chris Cowger*, of Kansas Insurance Department, of Topeka, was with him on the brief for cross-appellee.

The opinion of the court was delivered by

LOCKETT, J.: Claimant Larry J. Baxter appeals the denial of workers' compensation and the finding that his second injury did not aggravate the preexisting condition for which he had received a settlement for total permanent partial disability. The Kansas Court of Appeals, pursuant to Rule 7.042 (b) and (d) (235 Kan. lxxiv), affirmed the trial court. We reverse the decision on this issue.

Claimant Baxter filed a claim for compensation for a second back injury. The second injury occurred January 6, 1983, when Baxter slipped and fell while performing carpentry duties for his employer, L. T. Walls Construction Company (Walls).

Approximately four years earlier, in November 1978, Baxter had sustained a serious back injury while working for another employer. As a result of that injury, Baxter was hospitalized with a crushed disc and broken vertebra and had multiple surgeries. In June 1980, Baxter's physician, Dr. Ernest Szabados, gave claimant a rating of 100 percent permanent partial disability. In August 1981, Dr. Szabados reexamined claimant and stated that Baxter remained 100 percent permanently partially disabled. Dr. Szabados further stated that, in his opinion, this disability rating was permanent. Baxter was also examined by his employer's insurance carrier physician, Dr. Edwin MacGee, in October 1981. Dr. MacGee found that Baxter was chronically disabled due to pain but would be able to perform any job within the limits of his discomfort.

In 1981, Baxter's disability claim for the 1978 injury was settled and he received a lump sum payment of $22,650. The settlement was based on Dr. Szabados' rating of 100 percent permanent partial disability.

In February 1982, approximately four years after his original accident, Baxter was able to begin remodeling work on his own home. From September to November 1982, Baxter helped a former employer by performing carpentry work on a house building project. The former employer testified that Baxter performed his carpentry work satisfactorily. In November 1982, Baxter began working as a rough-in carpenter for Walls, the

respondent. Walls testified that prior to Baxter's second accident, Baxter was able to perform his work requirements satisfactorily.

After his 1983 injury, Baxter was examined again by both Dr. Szabados and Dr. MacGee. Dr. Szabados rated claimant's disability at 100 percent temporary total disability in a report dated March 18, 1983. However, in a later report on June 10, 1983, Dr. Szabados stated that claimant was "at least 50% disabled in terms of the body as a whole prior to his recent industrial accident, 1/6/83." Dr. MacGee found that there was no substantial evidence to indicate that Baxter's condition was significantly changed by the 1983 injury, but there was an increased disability of five to ten percent.

On May 22, 1984, a hearing was held regarding the 1983 injury. On January 7, 1985, the administrative law judge found that an injury had occurred which arose out of the course of plaintiff's employment. However, he denied claimant's claim for disability. The administrative law judge concluded that claimant was already 100 percent disabled; therefore, he did not receive any additional disability to the body as a whole from his accident on January 6, 1983.

On appeal, the Director of Workers' Compensation reversed the administrative law judge. The Director found that the 1983 injury had in fact aggravated Baxter's preexisting back injury and increased his disability. He stated that the test for permanent partial disability is not related to functional anatomical impairment, "but whether claimant is unable, because of the injury, to perform portions of the job duties that he was performing at the time of the injury." He found that Baxter's condition had improved following the 1978 injury as evidenced by the fact that by 1982 Baxter was able to perform carpentry work to the satisfaction of his employer. The Director further found that Baxter again suffers from 100 percent permanent partial general bodily disability from performing work of the type and character that he was performing at the time of his injury. Following the requirements of K.S.A. 44-510a, the Director reduced Baxter's award by giving the employer credit for the 100 percent permanent partial disability benefits that Baxter had previously received.

This award was appealed and the district court reversed the Director. The district court found, as had the administrative law

judge, that Baxter had 100 percent permanent partial disability as a whole when he obtained employment with Walls, and, therefore, the worker could not have aggravated a preexisting disability in the second accident. The Kansas Court of Appeals affirmed the district court. We granted review.

In workers' compensation cases, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below and if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court. *Dieter v. Lawrence Paper Co.*, 237 Kan. 139, 145, 697 P.2d 1300 (1985). The term "substantial evidence" when applied to workers' compensation cases means evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved. *Crabtree v. Beech Aircraft Corp.*, 229 Kan. 440, 442, 625 P.2d 453 (1981).

The test for determining permanent partial general disability is the extent to which the injured worker's ability has been impaired to engage in work of the same type and character he or she was performing at the time of the injury. In considering a permanent partial general disability under K.S.A. 44-510e, the work disability is measured by the reduction, expressed as a percentage, in the worker's ability to engage in work of the same type and character that he or she was performing at the time of the injury. Where a claimant in a workers' compensation case is found to suffer a permanent partial general disability, the pivotal question is, what portion of claimant's job requirements is he or she unable to perform because of the injury? *Ploutz v. Ell-Kan Co.*, 234 Kan. 953, Syl. ¶¶ 3, 4, 5, 676 P.2d 753 (1984).

When a worker with a preexisting condition is accepted for employment and a subsequent industrial injury *aggravates, accelerates, or intensifies* his condition, resulting in disability, he is entitled to be fully compensated for the resultant disability. *Harris v. Cessna Aircraft Co.*, 9 Kan. App. 2d 334, 336, 678 P.2d 178 (1984). K.S.A. 44-510a provides that the compensation for the disability resulting from the later injury is to be reduced by the

percentage of contribution that the prior disability contributes to the overall disability of the later injury. A reduction in the subsequent award is required if compensation was actually paid or is collectible for a prior disability. Such reduction ceases on the date the compensation for the prior disability terminates or, if settled by a lump sum award, would have terminated if paid on a weekly basis.

Baxter argues that, since he was able to return to carpentry work in 1982 and 1983, he could not have been 100 per cent permanently partially disabled at that time.

The district court found that claimant was 100 percent permanently partially disabled when he began working for Walls and that the January 1983 injury, therefore, could not have aggravated his condition. This finding is inconsistent with the medical testimony and disregards the fact that Baxter was able to satisfactorily perform exactly the type of rough-in carpentry work he had performed prior to his first injury. The record supports Baxter's claim that following his surgery and recovery from the first injury his disability was reduced, and three years after his first injury he was able to resume work as a rough-in carpenter. After returning to work, Baxter's second injury aggravated the prior disability to the point that he is again 100 percent disabled. The employer admitted that prior to his second accident, Baxter was physically able to work. The testimony of both physicians indicates that Baxter's condition had improved from the 100 percent permanent partial disability rating which existed after the 1978 injury and that the second injury in 1983 aggravated Baxter's preexisting condition resulting in increased disability.

Recognizing that modern medical treatment, time, and the healing qualities of nature make it possible to reduce a disability or even completely rehabilitate a disabled worker, the legislature has stated that the primary purpose of the Workers' Compensation Act is to restore the injured worker to substantial and gainful employment. The injured worker is entitled to medical and physical rehabilitation services necessary to restore the worker to employment. Once the worker has been rehabilitated, the Director reviews the award and modifies the existing award. If an injured worker without good cause refuses to undertake rehabilitation, reeducation, or to enter a retraining program, the

Director is required to suspend the payment of compensation. K.S.A. 44-510g.

A compensation award for permanent partial disability is intended to substitute for lost earning power and not simply to recompense loss of ability to perform a certain task. A monetary award cannot replace a lost limb or repair damage to a crippled back, but once such an award is made, the claimant's earning power should be regarded as restored. Therefore, a previous disability rating should not affect the right to a subsequent award for permanent disability. *Hampton v. Professional Security Co.*, 5 Kan. App. 2d 39, 611 P.2d 173 (1980). K.S.A. 44-510a provides the method of reducing later awards when a subsequent injury aggravates a preexisting disability for which compensation was or is still being paid.

Prior settlement agreements regarding a claimant's percentage of disability control only the rights and liabilities of the parties at the time of that settlement. The rating for a prior disability does not establish the degree of disability at the time of the second injury. One hundred percent permanent partial disability is not an unalterable condition and a worker may be rehabilitated and then return to work. A worker who has once been adjudged 100 percent permanently partially disabled and has received or is receiving benefits, but thereafter returns to work and is again injured while working, is not precluded from receiving benefits for the loss of wages resulting from the subsequent injury's aggravation of his disability. A disabled worker may receive disability benefits more than once, but the worker may not pyramid benefits and receive in excess of the maximum weekly benefits provided by statute.

Both the district court and the Court of Appeals erred when they determined that claimant was 100 percent permanently partially disabled when he began work for respondent. The record shows that claimant's prior disability had been reduced and his second accident aggravated his prior injury and left him with a further disability. Under the facts and circumstances of this case, the Director made the proper finding of facts and applied the statutory reduction under the provisions of K.S.A. 44-510a. On this issue, the judgments of the Court of Appeals and

the District Court are reversed and the Director's order is reinstated.

Finally, since the respondent has not met its burden of proof that the claimant knowingly concealed or misrepresented his condition prior to employment with Walls, the Workers' Compensation Fund had no liability pursuant to K.S.A. 44-567(c)(6). The judgments of the Court of Appeals and the District Court on this issue are affirmed.