(820 P.2d 719)
No. 66,381

GERALD H. WIETHARN, *Appellant*, v. SAFEWAY STORES, INC., and THE KANSAS WORKERS COMPENSATION FUND, *Appellees*.

Opinion filed November 8, 1991.

*John J. Bryan* and *Kathryn D. Myers,* of Bryan, Lykins, Hejtmanek & Wulz, P.A., of Topeka, for the appellant.

*John David Jurcyk,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellee Safeway Stores, Inc.

*Rex W. Henoch,* of Holbrook, Heaven & Fay, P.A., of Kansas City, for the appellee Kansas Workers Compensation Fund.

Before PIERRON, P.J., LARSON and LEWIS, JJ.

PIERRON, J.: Appellant Gerald Wietharn appeals the trial court's finding that a second injury suffered by him while at work is not compensable due to his failure to report it to his employer.

Mr. Wietharn was the manager of a Safeway Store and was Safeway's authorized agent to receive employee accident reports at his store. Part of his job was to forward those reports to the district manager. On December 31, 1983, Gerald Wietharn was injured in an accident while at work. His knee was broken and he did not return to work until May 21, 1984. Mr. Wietharn forwarded a report of the accident in which his knee was broken on the day of the accident.

On June 20, 1984, Gerald Wietharn alleges he was again injured while at work when his previously injured knee gave way as he was lifting a 60-pound case of vegetables, causing him to fall backwards against a pallet where other cases of vegetables were stacked. He alleges that his back was injured in that accident. While Mr. Wietharn told his assistant about the accident, he did not file an accident report until Safeway requested that he do so in October 1985.

On June 29, 1984, Mr. Wietharn visited Dr. Payne, the orthopedic doctor treating his knee, but the doctor's notes do not record him as mentioning the accident or injury to his back. When Mr. Wietharn visited Dr. Payne on July 20, 1984, the clinical notes do indicate that he mentioned straining his back while lifting something at the store and having had some discomfort in his low back for a time.

Mr. Wietharn continued to visit Dr. Payne for both his knee and his back until August 1985 when he was released from treatment. The bills and clinical notes were always sent to Safeway's workers compensation administrator and they were always paid. In July of 1985, Dr. Payne received a letter from Safeway's attorney telling him payment would no longer be made for treatment to Mr. Wietharn's back, as the clinical notes indicated:

"Unrelated to his knee, the patient continues to have some soreness in his low back." The attorney did agree that Safeway would pay Dr. Payne's fees for treatment of the knee injury up to the date of claimant's last visit. Despite that, payment for Mr. Wietharn's subsequent visit to Dr. Payne in August 1985, which concerned only his back, was authorized by Safeway's workers compensation administrator. Mr. Wietharn was released in August 1985 from Dr. Payne's care. Mr. Wietharn continues to work for the grocery store as store manager.

In response to a request by Safeway, Mr. Wietharn filed an accident report for the June 20, 1984, accident in October 1985. A written claim for compensation was mailed on December 17, 1985. This litigation ensued. There is no dispute regarding claimant's December 31, 1983, accident in which his knee was broken.

Safeway and the Kansas Workers Compensation Fund do contest the June 20, 1984, accident. The administrative law judge awarded claimant a 7.5% permanent partial disability to the body as a whole resulting from the June 20, 1984, accident. The Workers Compensation Director found that the injury to claimant's back was not a natural result of his knee injury and that it was a separate and distinct injury, unrelated to his knee injury. The Workers Compensation Director also found (1) that claimant did not provide timely notice of the accident within 10 days pursuant to K.S.A. 44-520, (2) that respondents Safeway and Kansas Workers Compensation Fund were prejudiced by the lack of timely notice, (3) that claimant did not serve respondent with a timely written claim for compensation, and (4) that the administrative law judge's award of 7.5 percent permanent partial disability should be modified to deny any claim since claimant failed to notify the employer, the employer was prejudiced by the lack of timely notice, and the written claim for compensation was untimely.

On appeal to the district court, the findings of the Director of Workers Compensation were adopted by the court. Mr. Wietharn timely perfected this appeal.

The standard of review is quite clear in workers compensation cases. The appellate court may substitute its judgment only when reviewing questions of law. *Reeves v. Equipment Service Indus-*

*tries, Inc.*, 245 Kan. 165, 176, 777 P.2d 765 (1989). When reviewing questions of fact, the appellate court should determine whether the judgment of the district court is supported by substantial evidence. The evidence should be viewed in the light most favorable to the prevailing party below and "if there is substantial evidence to support the district court's factual findings, the appellate court has no power to weigh evidence or reverse the final order of the district court." *Baxter v. L. T. Walls Constr. Co.*, 241 Kan. 588, 591, 738 P.2d 445 (1987). In workers compensation cases, "substantial evidence" means "evidence that possesses something of substance and relevant consequence or evidence that furnishes a substantial basis of fact from which the issues presented can be reasonably resolved." *Baxter*, 241 Kan. at 591. This court may not disturb the findings of fact of the district court even if this court feels the weight of the evidence as a whole is contrary to the district court's findings as long as those findings are supported by substantial competent evidence. *Dieter v. Lawrence Paper Co.*, 237 Kan. 139, 145, 697 P.2d 1300 (1985).

The first issue presented to us is whether the employer received notice or had actual knowledge of the accident within the statutory time frame in the absence of a written notice.

Claimant has appealed the director's decision, as adopted by the district court, that Safeway did not have notice of his accident on June 20, 1984. The relevant statute states:

"Proceedings for compensation under the workmen's compensation act shall not be maintainable unless notice of the accident, stating the time and place and particulars thereof, and the name and address of the person injured, shall have been given to the employer within ten (10) days after the date of the accident *Provided,* That actual knowledge of the accident by the employer or his duly authorized agent shall render the giving of such notice unnecessary: *Provided further,* That want of notice or any defect therein shall not be a bar unless the employer prove that he has been prejudiced thereby." K.S.A. 44-520.

The fact that claimant did not contact his district manager with an accident report within 10 days of June 20, 1984, is not contested. Claimant did, however, tell his assistant. The appellant cites *Cross v. Wichita Compressed Steel Co.*, 187 Kan. 344, 356 P.2d 804 (1960), to support the argument that knowledge of the

assistant is sufficient. However, the injured employee in *Cross* gave notice to his *superior*—a foreman.

Claimant's primary argument is that as the store's authorized agent to receive notice of employee injuries, he, of course, had actual knowledge of his own accident. If the authorized agent had actual knowledge of the accident then the statute does not require notice.

Whether the authorized agent's actual knowledge of his own accident waives the statutorily required notice to the employer has never been addressed by the Kansas courts. Certainly, the plain language of the statute does not make an exception for situations in which the authorized agent is also the claimant. The clearest interpretation of the statute would be that actual knowledge waives notice even if the authorized agent is the injured employee. " '[W]hen a workers' compensation statute is subject to more than one interpretation, it must be construed in favor of the worker if such construction is compatible with legislative intent.' " *McGranahan v. McGough,* 15 Kan. App. 2d 24, 25, 802 P.2d 593 (1990), *reversed on other grounds* 249 Kan. 328, 820 P.2d 403 (1991). It would be more favorable to the worker if the statute were construed to allow actual knowledge by the injured authorized agent to effectively waive the statutorily required notice. However, would it be compatible with legislative intent? The purpose of this statute "is to afford the employer an opportunity to investigate the accident and to furnish prompt medical treatment." *Pike v. Gas Service Co.,* 223 Kan. 408, 409, 573 P.2d 1055 (1978).

If an authorized agent had knowledge of his own injury but did not forward such knowledge to the employer, then the purpose of the statute would be defeated and the result would effectively be strict liability on behalf of the employer. Since the legislature intended employers to have an opportunity to investigate reports of accidents, such a result would not be consistent with legislative intent. The claimant/authorized agent clearly has a conflict of interest and could innocently worsen his or her condition by not seeking proper medical care promptly or could actually deceive the employer.

Although claimant in this case may have believed that his June 20, 1984, accident was a continuation of his December 31, 1983,

accident and that a new report was not necessary, claimant was well aware of the reporting requirement. His report of his knee injury on December 31, 1983, proves this. Claimant argues that if another employee had been injured and the authorized agent had neglected to tell the employer about the accident, the employee would still be covered. Claimant is correct, but this argument ignores the statute's purpose (immediate investigation and prompt medical care) and the claimant's possible conflict of interest.

Our research found only one case in the United States that directly addressed this issue. Under a similar statute, the Montana court in *Hunt v. Sherwin Williams Co.*, 191 Mont. 348, 624 P.2d 489 (1981), held that where claimant failed to give notice of an injury, employer had no actual notice, and employer could not protect itself by investigating and providing treatment, knowledge by claimant did not constitute actual knowledge by the managing agent or superintendent even though claimant was manager of the paint store. Accord *Renco, Inc. v. Nunn,* 474 P.2d 936 (Okla. 1970) (president and manager of corporation acting as both employer and employee, injured at work and selecting his own doctor, without notice to workers compensation insurer, cannot operate to toll one-year statute of limitations).

In the instant case, there is conflicting testimony over the circumstances surrounding the June 20, 1984, accident. The notes of the doctor treating claimant did not report the injury in the same manner as claimant does. Additionally, reference to a back injury does not appear in the doctor's notes of an appointment nine days after the accident and is only mentioned one month later. There is also conflicting testimony by the claimant himself about the number of hours claimant worked before and after the accidents and the reason therefor (slowdown in business versus too injured to continue doing all the same duties). The purpose of notice is to allow investigation of such inconsistencies. Claimant also claims that the employer had actual knowledge of the accident through the clinical notes sent by Dr. Payne to the workers compensation administrator. Even if this was sufficient to give notice, which is questionable, it was well beyond the 10-day limit.

We find that the employer did not receive notice of claimant's accident in a timely fashion and that actual knowledge by an

authorized agent of his or her own accident does not constitute the "actual knowledge" contemplated by the statute.

We should also note that whether there was notice of the injury as required by 44-520 is a question of fact, and the appellate court should generally accept the district court's finding. *Pike*, 223 Kan. at 409.

The next issue is whether the employer has been prejudiced by the lack of notice. This is a question of fact and the appellate court will only review the district court's finding to determine if sufficient evidence supports that finding. *Gales v. Kiewit Sons' Co.*, 184 Kan. 573, 576, 337 P.2d 669 (1959). In this case, the employer received a formal report of the accident in October 1985, at least sixteen months after the injury. Claimant had already been released from medical treatment and any investigation would most certainly be hampered by the time difference. No notice can be claimed prior to the forwarding of the July 20, 1984, physician's notes. Sufficient evidence does exist to support the district court's finding of prejudice.

A related issue is whether a written claim was timely made for the accidental injury of June 20, 1984.

As required by K.S.A. 44-520a, a claimant must make a timely written claim for compensation. The relevant provision reads:

"(a) No proceedings for compensation shall be maintainable under the workmen's compensation act unless a written claim for compensation shall be served upon the employer by delivering such written claim to him or his duly authorized agent, or by delivering such written claim to him by registered or certified mail within two hundred (200) days after the date of the accident, or in cases where compensation payments have been suspended within two hundred (200) days after the date of the last payment of compensation; or within one (1) year after the death of the injured employee if death results from the injury within five (5) years after the date of such accident."

Claimant contends he made written claim in one of two ways:

(1) By seeing Dr. Payne and instructing him to bill the workers compensation carrier he made timely written claim for compensation, and/or

(2) he filed a report of an accident on October 21, 1985, and wrote a letter to counsel for Safeway Stores in December 1985, both of which are within 200 days after the date of the last payment of compensation.

The answer to whether either possible claim was, in fact, a written claim can be found by reference to *Sparks v. Wichita White Truck Trailer Center, Inc.,* 7 Kan. App. 2d 383, 642 P.2d 574 (1982). The *Sparks* court held that "the issue is whether the medical care was authorized, either expressly or by reasonable implication. If the claimant receives medical care with the reasonable expectation of payment by the employer the care is 'compensation' when rendered even though it may never be paid for." 7 Kan. App. 2d at 385-86. The district court adopted the findings of the Director of Workers Compensation, who expressly found "the respondent did not knowingly pay for any compensation or medical treatment for an alleged back injury."

The question of whether a written claim was timely filed is primarily an issue of fact and should not be disturbed if supported by substantial competent evidence. *Morgan v. Inter-Collegiate Press,* 4 Kan. App. 2d 319, 321, 606 P.2d 479 (1980). While the director and district court could have held that, if a workers compensation carrier pays doctor's bills, it should be held to know what it is paying for, they did not so hold. They found that since the bills were identified as bills for "12-31-83/knee," the payment of them did not constitute knowledge of payment for treatments to claimant's back. This finding is supported by substantial competent evidence and should be left undisturbed.

The final substantive issue presented by claimant is whether claimant's back injury of June 20, 1984, occurred as a natural and probable result of his knee injury of December 31, 1983.

Claimant alleges his weakened knee gave way, causing his fall on June 20, 1984. From the treatment given a similar question in *Stockman v. Goodyear Tire & Rubber Co.,* 211 Kan. 260, 262-63, 505 P.2d 697 (1973), this would appear to be a question of fact. In *Stockman,* the court reviewed the record to determine if it disclosed sufficient competent evidence on which the trial court could base a finding that the claimant suffered a new injury rather than a continuation of the first injury. *Stockman,* 211 Kan. at 260. In that case the claimant injured his back at work. One day after being released to return to work, the claimant reinjured his back at home. The court found the second injury was a new injury despite the fact that the same body part was injured only

one day after claimant was considered well enough to return to work. *Stockman,* 211 Kan. at 261-63.

Of primary importance in the instant case is the fact that an entirely different body part was injured. While Dr. Payne's clinical notes indicate that claimant indicated as early as March 1984 that his knee tended to give way and Dr. Payne testified that it was possible claimant's knee could and would give way in the future, such testimony does not necessitate a finding that the second accident was a natural and probable result of the first accident. The claimant argues that his weakened knee caused his fall and, as such, the second injury is a natural result. We believe this approach was rejected in *Stockman.*

"This argument is based on the rule in *Jackson v. Stevens Well Service,* 208 Kan. 637, 493 P.2d 264, where we said:

'When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury.' (Syl. ¶ 1.)

"The rule in *Jackson* is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in the instant case. The rule in *Jackson* would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, but not when the increased disability resulted from a new and separate accident." *Stockman,* 211 Kan. at 263.

Finally, we are asked to determine whether claimant is entitled to reimbursement for unauthorized medical expenses of $350 for one accident, as the trial court held, or $700 for two separate accidents/claims in the amount of $350 each, as the claimant alleges.

Claimant would like compensation for consulting with a different doctor since Dr. Payne's rating of his back disability was zero percent. K.S.A. 44-510(c) would seem to authorize this. However, since we find that only the first injury is covered by workers compensation, only one claim can be authorized, and the trial court's allowance of $350 reimbursement is affirmed.

The decisions of the trial court on all issues are affirmed.