(128 P.3d 430)
No. 94,206

ANTHONY K. LOGSDON, *Appellee*, v. BOEING COMPANY and AETNA CASUALTY & SURETY CO., *Appellants*.

Opinion filed February 17, 2006.

*Eric K. Kuhn* and *Stephen M. Kerwick*, of Foulston Siefkin, L.L.P., of Wichita, for appellants.

*Gary A. Winfrey*, of Winfrey Law Offices, of Wichita, for appellee.

Before HILL, P.J., GREENE, J., and BUKATY, S.J.

GREENE, J.: The Boeing Company and its insurer, Aetna Casualty & Surety Co., appeal an award of medical benefits to Anthony K. Logsdon, arguing that his non-work-related injury more than 10 years after his original compensable injury was not the natural and probable consequence of the earlier injury and the postaward medical expenses should not have been compensable. Concluding that substantial competent evidence supports the administrative law judge and Workers Compensation Board, we affirm Logsdon's award for postaward medical expenses.

*Factual and Procedural Background*

Logsdon suffered an injury to his left shoulder in the course of his employment with Boeing on November 1, 1993. The administrative law judge (ALJ) determined Logsdon's injury resulted in 15% permanent partial impairment of function to the left shoulder and he was entitled to 65 weeks of temporary total disability at the rate of $313 per week followed by 24 weeks at the rate of $313 per week, totaling $27,867. The ALJ decided Logsdon was "entitled to future medical treatment only upon proper application to the Workers Compensation Director."

After the original injury, Logsdon underwent two surgeries by Dr. Lesko and Dr. Harry Morris. He saw Dr. Morris for treatment in August 1995 for the last time; however, his shoulder was still sore but functional. Logsdon had work restrictions and his shoulder got sore after he elevated the arm, or became swollen because of the weather. Logsdon stated that his shoulder improved after the surgery but it never got back to full potential and caused him ongoing problems on a monthly basis.

Logsdon continued working for Boeing until September 2003, when he took a job at Prairie Rose, working on a cattle ranch and a supper club. Logsdon could perform all his duties at Prairie Rose, which included taking care of cattle, serving dinners, and mowing the lawn, and he did not seek any medical treatment for his shoulder problems.

On January 31, 2004, Logsdon stepped out the door of his home with a can of dog food in his right hand to feed his dogs. The ground was slick, he slipped, and he threw his arms up in the air trying to catch his balance. When he fell on the ground, landing on his right side, he flung his left arm out to maintain balance, and dislocated his left shoulder. Logsdon felt the same pain in his left shoulder as he had felt after the original accident in 1993; the shoulder was sore and weak. The next day, on February 1, 2004, Logsdon reached out to grab the door handle of his truck to close the door and dislocated his left shoulder again. Logsdon experienced further dislocation of his shoulder, but each time it went back into place without medical treatment.

In April 2004, Logsdon filed an application for postaward medical benefits resulting from the injury. The special administrative law judge (SALJ) ordered an independent medical evaluation by Dr. Philip Mills. Dr. Pedro Murati also conducted a medical evaluation at the request of Logsdon's attorney.

After reviewing Logsdon's medical and personal history and performing a physical examination of Logsdon, Dr. Murati concluded Logsdon's "current diagnoses are within all reasonable medical probability a direct result from the work-related injury that occurred on November 1, [1993] during employment with Boeing." Dr. Mills agreed, stating:

"[T]his is a but-for situation in which if [Logsdon] would not have had an injury in '93, . . . he would not have had the injury which he sustained from a relatively trivial—although it wasn't in the ordinary course of events—but a trivial slip and fall, threw his arms up, that in and of itself wouldn't have caused an injury in a normal person."

Dr. Mills stated Logsdon did not have a normal or near normal shoulder because of underlying shoulder problems caused by the original accident in 1993; Dr. Mills found it significant that he experienced soreness in his shoulder on a monthly basis between 1995 and January 2004. Dr. Mills testified he would not comment on causation as a legal issue; however, his report stated that "this is the natural and probable consequence of this prior left shoulder injury and . . . there is not a new injury in that sense of the term for causation purposes."

The SALJ allowed Logsdon's application of postaward medical benefits in the amount of $4,185.90. Boeing and Aetna filed an application for review by the Board. The Board found the SALJ's award was supported by uncontroverted medical evidence and that Logsdon's injuries were a direct and natural result of the original compensable injury. Boeing and Aetna appeal.

## Standard of Review

The interpretation of statutory provisions in the Workers Compensation Act is a question of law. Under the doctrine of operative construction, the Board's interpretation of the law is entitled to judicial deference. If there is a rational basis for the Board's inter-

pretation, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. The party challenging the Board's interpretation bears the burden of proving its invalidity. *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004). The question of whether an injury is compensable is one of law, and an appellate court's review is de novo. *Frazier v. Mid-West Painting, Inc.*, 268 Kan. 353, 356, 995 P.2d 855 (2000).

Whether an injury is a natural and probable result of previous injuries is generally a fact question. *Wietharn v. Safeway Stores, Inc.*, 16 Kan. App. 2d 188, 195, 820 P.2d 719, *rev. denied* 250 Kan. 808 (1991). Where the Board's finding of compensable injury is based in part on a finding of fact, we review to determine whether any such finding is supported by substantial competent evidence. In doing so, it is necessary to determine whether the record contains any evidence which tends to support the judgment rendered, viewing all testimony in the light most favorable to the party prevailing below. See *Webber v. Automotive Controls Corp.*, 272 Kan. 700, 705, 35 P.3d 788 (2001).

*Did the Board Err in Its Award of Postaward Medical Treatment to Logsdon?*

Boeing and Aetna contend that the Board misapplied the legal standard for compensability of postaward medical benefits. Both parties concede that this case is controlled by the rule first established by our Supreme Court in *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P.2d 264 (1972), sometimes called the "direct and natural consequence rule" or the "direct and natural result rule." As fully stated by the court in *Jackson,*

"[w]hen a primary injury under the Workmen's Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." 208 Kan. 637, Syl. ¶ 1.

The rule has proven easier in its statement than in its application. The tension in our appellate decisions is best demonstrated by contrasting *Jackson* with *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 505 P.2d 697 (1973), where only 1 year after *Jackson,*

Justice Owsley (who also wrote the court's opinion in *Jackson*), stated that the rule in *Jackson* was to be "limited."

"The rule in *Jackson* is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in instant case. The rule in *Jackson* would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, but not when the increased disability resulted from a new and separate accident." 211 Kan. at 263.

Since *Jackson* and *Stockman*, our courts have struggled to understand and consistently apply the rule. The more straightforward situations are those where a primary injury *itself* causes subsequent further injury to the same or other body parts; in these cases there is usually no "intervening" trauma or accident and the subsequent claim is allowed. See, *e.g.*, *Nance v. Harvey County*, 263 Kan. 542, 952 P.2d 411 (1997); *Makalous v. Kansas State Highway Commission*, 222 Kan. 477, 565 P.2d 254 (1977); *Reese v. Gas Engineering & Construction Co.*, 219 Kan. 536, 548 P.2d 746 (1976). These cases should not be confused with the tougher cases, where some intervening accident or trauma has aggravated a prior injury; as noted by the Board here, these cases make it "difficult to discern . . . consistent criteria."

Although not intended to be exhaustive, the following reported cases have allowed compensability for a subsequent injury that is a "direct and natural consequence" of a primary injury, despite an intervening accident or trauma: *Frazier v. Mid-West Painting, Inc.*, 268 Kan. 353 (claimant's subsequent injury was aggravation of an old preexisting back injury while participating in medical treatment programs for a compensable injury to his right forearm and shoulder); *Roberts v. Krupka*, 246 Kan. 433, 790 P.2d 422 (1990) (where court "expanded" the rule holding that any additional injury arising from medical malpractice in the treatment of the primary injury is compensable); *Gillig v. Cities Service Gas Co.*, 222 Kan. 369, 564 P.2d 548 (1977) (2 years after initial injury to knee, claimant stepped from tractor and knee locked up).

In contrast, the following reported cases have denied compensability for a subsequent injury on the ground that it resulted from a new and separate accident: *Wietharn v. Safeway Stores, Inc.*, 16 Kan. App. 2d 188 (where original injury was broken knee, and knee

"gave way" while lifting heavy crate 30 days after return to work; denied despite evidence knee tended to "give way" and treating physician had warned could "give way" in the future); *Graber v. Crossroads Cooperative Ass'n,* 7 Kan. App. 2d 726, Syl., 648 P.2d 265, *rev. denied* 231 Kan. 800 (1982) (after original back injury had healed and been fused, claimant slipped and broke part of the fusion during his fall; court said "a distinct trauma-inducing event out of the ordinary pattern of life and not a mere aggravation of a weakened back").

Although it would be ideal if we could reconcile these authorities, we are unable to do so; we share the Board's frustration in discerning consistent criteria for the application of the rule. Nevertheless, our examination of the cases has assisted us in discerning two reasons to affirm the Board's award to Logsdon: (i) because the ultimate question is one of fact, our standard of review requires that we defer to the Board where its determination of compensability or noncompensability is supported by substantial competent evidence (see *Stockman,* 211 Kan. at 263); and (ii) where the initial or primary injury has not yet healed, the precipitating cause of reinjury is irrelevant (see discussion of *Gillig* in *Graber,* 7 Kan. App. 2d at 728).

Boeing and Aetna cite both *Stockman* and *Graber* in support of their argument that the Board here attempted to create a "trivial" accident exception to the rule of these cases. We disagree. No medical testimony supported Boeing and Aetna's view of the "new" injury. Although one of the testifying physicians may have characterized the subsequent trauma as "trivial," it is clear from the following statements that the Board applied the correct legal standard and that the evidence fully supported the award.

"Two physicians have evaluated claimant and both have testified that 'but for' the underlying accident, claimant would not have sustained this shoulder dislocation. Dr. Mills testified that the slip-and-fall was a 'trivial' new event, and that he believed the claimant's shoulder dislocation was a 'natural and probable' result of the 1993 accident. Likewise, Dr. Murati viewed the 2004 left shoulder dislocation as an event that would not have occurred had he not sustained the underlying shoulder injury in 1993. He further testified that claimant's ongoing symptoms reveal that claimant had not completely healed from the 1993 accident.

"Every natural consequence of a compensable injury is also compensable, even a new and distinct injury, if it is a direct and natural result of the original compensable injury."

In summary, there was substantial competent evidence supporting the Board's conclusion that Logsdon's subsequent injury was the natural and probable consequence of his prior injury. That same evidence is unequivocal in suggesting that there was no new injury. Because Logsdon's prior injury had never fully healed, his aggravation of that same injury by a subsequent non-work-related accident was the natural consequence of his original injury and his postaward injury was compensable. See *Gillig v. Cities Service*, 222 Kan. at 372.

Affirmed.