NOT DESIGNATED FOR PUBLICATION

No. 116,154

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LARRY B. GRIGGS,
*Appellee*,

v.

CESSNA AIRCRAFT CO.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed March 31, 2017. Affirmed.

*P. Kelly Donley* and *Travis L. Cook*, of McDonald Tinker PA, of Wichita, for appellant.

*Jonathan E. Voegeli*, of Slape & Howard, Chartered, of Wichita, for appellee.

Before GREEN, P.J., STANDRIDGE and GARDNER, JJ.

*Per Curiam*: Cessna Aircraft Co. appeals from the decision of the Workers Compensation Board that it is responsible to pay Larry B. Griggs' post-award medical benefits. Finding no reversible error, we affirm.

*Factual and procedural background*

Griggs injured his right knee while working at Cessna Aircraft Company in 1997. He was exiting a plane onto a stepladder when the stepladder shifted out from under him, causing him to fall and injure his knee. The injury was found compensable under the Kansas Workers Compensation Act (Act). Griggs had surgery to reconstruct his anterior

cruciate ligament via a patellar tendon autograft in 1997. He attended physical therapy and was ultimately placed at maximum medical improvement in November 1998, with an impairment rating of 22%. He settled with Cessna on a running award basis with future medical left open.

In November 2014, Griggs was working for Spirit Aerosystems, Inc., when he slid out of a plane and jammed his right knee. A subsequent MRI revealed marked tricompartmental degenerative findings, loose bodies, osteophytes, with evidence of a prior ACL repair with possible torn graft, and medial and lateral meniscus tears. The treating physician recommended a total knee replacement. Griggs filed a workers compensation claim against Spirit and an application for post-award medical benefits against Cessna. The administrative law judge (ALJ) consolidated the cases and appointed an independent medical examiner, Dr. Daniel Stechschulte, to evaluate the cause for Griggs' need for total knee replacement surgery.

The ALJ denied Griggs' claim against Spirit but granted Griggs post-award medical benefits from Cessna. Cessna appealed to the Kansas Workers Compensation Appeals Board (Board), which affirmed. The ALJ and the Board both found that Griggs' current need for knee replacement was due to his 1997 injury at Cessna and was not due to the 2014 incident. The Board ruled that Spirit had no responsibility because Griggs' need for knee replacement surgery was a direct and natural consequence of his 1997 injury at Cessna; Cessna was liable for that surgery because Griggs did not have a second injury that caused his need for that surgery. Cessna appeals, meeting all prerequisites to invoke our jurisdiction.

*Standard of review*

Our review is governed by the Kansas Judicial Review Act (KJRA). It provides that we may review only questions of law and can grant relief only under enumerated

2

circumstances. Cessna challenges both the Board's interpretation of law and its findings of fact.

Relief may be granted if the Board erroneously interpreted or applied the law. K.S.A. 2016 Supp. 77-621(c)(4). Whether the Board properly interpreted and applied the law is a question of law subject to de novo review. See *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015).

Our review of determinations of fact is more limited. Relief may be granted if "the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in the light of the record as a whole." K.S.A. 2016 Supp. 77-621(c)(7). "In light of the record as a whole" includes the entire record—both the evidence that supports the Board's finding of fact and that which detracts from it. K.S.A. 2016 Supp. 77-621(d). Thus, we are called to determine whether the evidence supporting the agency's decision has been "so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009).

*Did the Board apply the 2014 law?*

Cessna seems to contend, although not clearly so, that the Board erred because it applied the new law in effect in 2014, instead of the old law in effect in 1997.

Although the law changed in substantive respects between Griggs' injury at Cessna in 1997 and his incident at Spirit in 2014, the parties agree, as do we, that proper resolution of this case is governed by the law in effect in 1997. See *Lyon v. Wilson*, 201 Kan. 768, 774, 443 P.2d 314 (1968); *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 216,

364 P.3d 1206 (2015) ("The statute in effect at the time of the claimant's injury governs the rights and obligations of the parties.").

The law in effect in 1997 used the "natural and probable consequences" test. Under that test, every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury. *Jackson v. Stevens Well Service*, 208 Kan. 637, 643, 493 P.2d 264 (1972). In contrast, the law in effect in 2014 used the "prevailing factor" test. Prevailing factor "means the primary factor, in relation to any other factor." K.S.A. 2014 Supp. 44-508(g). *Eder v. Hendrick Toyota*, No. 114,824, 2016 WL 7324454, at *5 (Kan. App. 2016) (unpublished opinion).

We find no basis in fact to Cessna's suggestion that the Board's conclusion was based on the new law. The Board's decision, which found Griggs' injury compensable, squarely refutes that conclusion, stating: "Under the new law, claimant does *not* have a compensable injury by accident because," then lists four reasons in support. The Board's decision did not cite the new law or the prevailing factor test, but instead found the ALJ's holding that "claimant's current condition was a direct and natural consequence of his 1997 injury" was supported by the evidence. Accordingly, we find the Board applied the old law, as it should have.

*Did the Board err in failing to determine whether an intervening accident occurred?*

Cessna next argues that the Board erroneously failed to determine whether the 2014 incident was an intervening accident that aggravated Griggs' 1997 condition.

But the record shows that the Board made that very determination. The Board focused on whether the 2014 incident constituted a new injury by accident that could terminate Cessna's liability. It framed the issue as: "Is [Griggs'] knee condition and need

4

for medical treatment due to his 1997 accidental injury, his alleged 2014 injury by accident or both?"

The Board did not fail to determine whether the 2014 incident constituted an "injury." Instead, the Board concluded that no new "injury" occurred in 2014 under either the old law or the new law and that the cause of Griggs' need for knee surgery was the 1997 injury. Accordingly, it affirmed the ALJ's post-award medical benefits against Cessna. The Board's conclusion necessarily encompassed a determination that the 2014 incident was not an intervening, superseding event that would discharge Cessna from liability.

*Does substantial competent evidence support the Board's determination that Griggs' need for treatment is a direct and natural consequence of his 1997 injury?*

Cessna's primary argument is that the Board erred in determining that Griggs' need for a knee replacement was a direct and natural consequence of his 1997 injury.

In *Jackson*, our Supreme Court articulated the direct and natural consequence rule for compensability:

> "[W]hen a primary injury under the Workmen's Compensation Act is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of a primary injury." 208 Kan. at 643.

Under that broad rule, "[t]he worsening of a claimant's compensable injury, absent any intervening or secondary injury, is a natural consequence that flows from the injury. It is a direct and natural result of a primary injury." *Nance v. Harvey County*, 23 Kan. App. 2d 899, 909, 937 P.2d 1245, *aff'd* 263 Kan. 542, 952 P.2d 411 (1997).

5

Cessna contends the Board erred in relying on *Jackson*, instead of on *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, 263, 505 P.2d 697 (1973). *Stockman* limited the rule in *Jackson*, finding increased disability resulting from a new and separate accident severs compensability under the initial injury:

> "The rule in *Jackson* is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in the instant case [where claimant suffered a non-work related injury at home]. The rule in *Jackson* would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, but not when the increased disability resulted from a new and separate accident." *Stockman*, 211 Kan. at 263.

Cessna contends that Griggs' increased disability resulted from a new and separate accident in 2014 which caused injury, thus Spirit and not Cessna is responsible.

We note that all the cases Cessna cites involve situations in which the second injury occurred in a non-work-related setting. The rule in *Jackson* comports with the purpose of the workers compensation scheme of providing a remedy to workers injured in the course of their employment. See *Olds-Carter v. Lakeshore Farms, Inc.*, 45 Kan. App. 2d 390, 408, 250 P.3d 825 (2011). *Stockman*, and the cases cited by Cessna, which examined home injuries, did not offend that purpose. None of them examine the responsibilities of successive employers for separate injuries, which is the issue in this case.

The Board expressly considered the cases *Jackson*, *Stockman*, and *Nance*, 263 Kan. 542 (holding that once a work-connected injury has been established, subsequent progression of that condition remains compensable so long as worsening is not shown to have been produced by an independent, nonindustrial cause). We find no error of law in the Board's analysis.

6

Whether an injury is a natural and probable result of a previous injury is generally a fact question. *Logsdon v. Boeing Co.*, 35 Kan. App. 2d 79, 82, 128 P.3d 430 (2006). The same is true here. Accordingly, we review the Board's findings of fact—both express and implied—to determine whether they are supported by evidence that is substantial when viewed in light of the record as a whole.

The only doctor to testify was the independent medical examiner, Dr. Daniel Stechschulte. No other medical reports were admitted as evidence. Thus, both parties emphasize different parts of Dr. Stechschulte's testimony.

First, Cessna asserts that Griggs' 1997 knee injury was fully healed by the time the 2014 incident occurred, so is not responsible for the costs of his knee replacement surgery, citing *Logsdon*, 35 Kan. App. 2d at 83. To support this argument, Cessna cites Dr. Stechschulte's testimony that Griggs told him his knee had been doing relatively well and was symptom-free and that he had performed his normal job duties without any problems until 2014. Cessna adds that Dr. Eyster had released Griggs at maximum medical improvement in 1998 and that Griggs did not tell Dr. Stechschulte that he had received any medical treatment for his right knee between 1998 and 2014.

We agree that these facts may show that Griggs' knee was functional and not painful before the 2014 event. But they do not show that Griggs' knee injury from 1997 had healed. To find that Griggs' knee had healed would require us to ignore Dr. Stechschulte's testimony, noted below, that the 2014 MRI showed "horrible degenerative arthritis, loose bodies, and osteophytes," all related to the early injury in 1997.

Second, Cessna asserts that the 2014 incident was a distinct, trauma-inducing accident sufficient to cause Griggs' current pain and need for knee replacement surgery. In support, Cessna points to two factors: a torn lateral meniscus and increased pain. Cessna notes that an MRI after Griggs' 2014 incident revealed a torn lateral meniscus, but

7

an MRI a month after Griggs' 1997 injury had not revealed such a tear. And after the 2014 incident, Griggs told Dr. Stechschulte of a constant ache in his right knee, weekly locking in his knee, sharp pain with locking, waking up through the night with pain, and pain when he engaged in prolonged activities. Cessna thus argues that Griggs tore his lateral meniscus in the 2014 accident, causing a new injury, *i.e.*, a lesion or physical change to the body.

But Dr. Stechschulte testified that he could not identify any anatomical change in the knee related to the November 2014 injury that would cause a need for surgery and that, anatomically, the need for surgery existed prior to that.

> "Q. But, there wasn't an anatomical change in November of 2014, that would necessitate the need for surgery, correct?
> "A. Not that I can identify.
> "Q. Okay. And, so, anatomically the need for surgery existed prior to November of 2014?
> "A. Anatomically, yes.
> "Q. . . . And . . . the anatomic changes that would have existed prior to the injury of November of 2014, were caused by the injury and the progression from the injury of 1997, correct?
> "A. Yes."

Dr. Stechschulte testified that he did *not* find any acute findings on the MRI that he would attribute to the 2014 injury:

> "Q. Were any of these findings as a result of the accident on October 10, 1997, or were they all attributable to the event on November 12, 2014?
> "A. Well, I think that the degenerative arthritis, loose bodies, osteophytes, prior ACL repair were all related to the early injury in 1997. It didn't appear to me on this MRI that the findings he had were acute."

When Dr. Stechschulte was directly asked whether the lateral meniscus tear was attributable to the 2014 incident, he responded, "Tough to say. I can't say for sure."

8

Accordingly, he did not read the 2014 MRI to reveal a new torn cartilage as a result of the 2014 incident, as Cessna's counsel does.

Dr. Stechschulte characterized the 2014 incident as a "triggering event," but he testified that the radiographic findings indicated that Griggs needed knee replacement before that event. Dr. Stechschulte does not typically do surgery, however, until a patient reports symptoms. Griggs experienced pain after the 2014 incident, so Cessna argues that the need for surgery did not arise until after the 2014 incident. But fairly read, Dr. Stechschulte's testimony is that Griggs needed a knee replacement as a result of his 1997 injury coupled with his "horrible degenerative arthritis" which was due to the 1997 injury. Griggs' need for knee surgery was thus revealed by, although not caused by, the 2014 incident.

Dr. Stechschulte testified that Griggs' need for a knee replacement was inevitable after his 1997 injury.

"Q. All right. And—and by a triggering event then, wouldn't it be accurate to state that his current need for surgery would not be necessary but for the event that occurred on November 12, 2014?
"A. No. I wouldn't agree with that.
"Q. Okay. And why not?
"A. Because it was inevitable.
"Q. Okay. I agree that it was inevitable. But the fact that [the] event occurred on November 12, 2014, didn't that accelerate the need for the surgery?
"A. My understanding of that [2014] injury would be that it wouldn't be significant enough to accelerate the need for that surgery."

Dr. Stechschulte stated that the 2014 incident was insufficient to cause Griggs' medical condition and need for surgery. He considered it a "triggering event" that could lead to an increase in symptoms or Griggs' recognition of symptoms. But the injury in

9

1997 and degenerative changes resulting over time from that injury were the prevailing factor in Griggs' need for a knee replacement. Griggs' need for a knee replacement was not a result of the natural aging process because Griggs' left knee, which was not injured in 1997, did not show nearly the extent of degenerative change as did Griggs' right knee. Dr. Stechschulte confirmed that Griggs' need for a knee replacement was a natural and probable consequence of his 1997 injury.

The Board considered Dr. Stechschulte's testimony that there were no identifiable anatomical changes in Griggs' knee and concluded there was no new injury because there was no new "lesion or physical change to the body" after the 2014 event. See K.S.A. 44-508(e) (defining injury in 1997 as "any lesion or change in the physical structure of the body"). We have reviewed the record, including the testimony Cessna cites in its brief, but none of it leads us to conclude that the evidence supporting the agency's decision has been so undermined that it is insufficient to support its conclusion. We cannot reweigh the evidence. Substantial competent evidence supports the Board's findings.

We find it unnecessary to address Griggs' argument that in the event he has no remedy for his injury, certain provisions of the Act are unconstitutional, or Cessna's related argument that we lack jurisdiction to consider that issue.

Affirmed.