Reynolds Mining Co., et al v. Howard Raper

5-4712                                    434 S.W. 2d 304

Opinion Delivered December 2, 1968

*Wright, Lindsey & Jennings* by *Phillip S. Anderson, Jr.* for appellants.

*McMath, Leatherman, Woods & Youngdahl* and *Silas H. Brewer* for appellee.

John A. Fogleman, Justice.    Appellants seek reversal of the judgment of the circuit court affirming an

award of the Workmen's Compensation Commission to Howard Raper, based on findings that he was totally and permanently disabled as a result of a compensable injury suffered on November 8, 1965. It is the contention of the appellants that there was no substantial evidence to support either a finding that there was a compensable injury or that the claimant was totally and permanently disabled.

In viewing the evidence it must be given its strongest probative force in favor of the action of the Commission. *Herman Wilson Lbr. Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487. The reason for doing so is that the drawing of inferences is the responsibility of the Commission when the testimony is open to more than a single interpretation. *Bradley County* v. *Adams,* 243 Ark. 487, 420 S.W. 2d 900. It must be kept in mind that the question is not whether the testimony would have supported a contrary finding, but whether it supports the finding made. The Commission's decision should not be reversed unless the proof is so nearly undisputed that fair-minded men could not reach the conclusion arrived at by the Commission. *Herman Wilson Lbr. Co.* v. *Hughes, supra.*

Raper was 46 years of age at the time of his injury. He had a third-grade education. He cannot read and cannot write except to sign his name. He has acquired no special vocational skills. His work experience prior to employment by Reynolds Mining Company consisted of driving a log truck, working on a railroad section gang, cutting logs, and working as a general laborer and as a carpenter's assistant. He had been employed by Reynolds approximately 20 years at the time of this alleged injury.

During his employment by Reynolds, appellee had earlier received a back injury for which he had undergone disc surgery and had been awarded a permanent partial disability of 20% to the body as a whole. Ulti-

mately, he returned to the same job he held before this injury. Appellants contend that Raper's present complaints are attributable to the 1954 injury, for which he has been fully compensated.

Raper worked in an underground mine as a "skip tender." His duties called upon him to assist in unloading small Jeep trucks used in the mine. The bed of a truck ready for unloading would be raised automatically and Raper would pull a lever which caused the tailgate on the truck bed to open and permit the load to pour into a bucket. This operation required him to bend over and then to rise up. He would then pull a rope which rang a bell at the surface. On this signal, the bucket would be raised to ground level and emptied.

Raper testified that his duties included cleaning out the truck beds. He said that trouble with boulders was sometimes encountered in the performance of his duties. On the occasion of his alleged injury, at about 8 p.m. on a Monday in November 1965, he said that a tailgate on one of the jeeps became "sprung" so that it gapped open at the bottom and he couldn't close it in spite of repeated efforts by pulling on the controlling lever. He stated that he was assisted in his efforts by two Jeep drivers, Wayne Glover and Donald Lesage. Although he said his back hurt after this exertion, he completed the shift ending at 1 a.m. He made no report to his supervisor or the first aid officer, although he knew he was required to report on-the-job injuries to his foreman. His excuse was that he thought he would be all right in a day or two. Having been unable to return to work, he sent his wife to report to the plant safety director on the following Friday. He first consulted a physician (Dr. Joe Lester) on the Monday following the incident. He reported to the doctor that his injury was not a workmen's compensation injury.

It is not clear from the testimony whether Raper gave the doctor a history of a work-connected injury until after he had engaged an attorney.

Lesage recalled the attempts to close the tailgate, but his memory as to the time of the incident and the time Raper quit working was faulty. He testified that Raper did not complain until after he made a few more loads after the tailgate was repaired. Raper was then holding his back, saying it had been hurt in his attempt to close the tailgate. He did remember, however, that he had told the safety director that he did not remember Raper's complaining about his back while they were working together in the mine.

Glover stated that he remembered the incident about the tailgate and that Raper went around in a stooped position the rest of the night.

Raper testified that his back had hurt some ever since his first injury, and when his back did hurt, he would lay off his job and rest a day or two.

After his first examination, Dr. Lester expressed the opinion that Raper had a long-standing history of lumbosacral strain following disc removal. Raper had reported to him that Drs. Jones and Murphy had recommended back surgery about a year earlier and that he had persistent low back pain, aggravated by bending and lifting. In January of 1966, Dr. Lester expressed the opinion that either minimal trauma of the nature related to him by Raper or aggravation by other minute trauma associated with his job could cause the back condition for which he was giving treatment. He further stated that, with good fortune, Raper could probably continue in his gainful employment and that there should be no additional permanent partial disability.

When Dr. Lester testified by deposition on April 11, 1966, however, he stated that with the chronic back instability of the nature Raper had, almost anything, such as a sudden slip, twist or fall, or even pulling on boots, could cause exacerbation; that Raper got along very well when he was not working, but had difficulty

when he went back to work; that Raper had gotten by on a borderline basis, but, in his opinion, would not be able to do so in the future; that it was debatable whether the injury suffered in November 1965 caused Raper to quit work. This doctor compared Raper's situation to that of a worn tire which will blow out sooner or later. He opined that appellee couldn't hope to return to the work he had been doing at present, but in the near future could return to light work which did not require lifting or bending. This doctor said there was no doubt that Raper had further aggravation of his condition by his last injury.

The Workmen's Compensation Commission found that appellee suffered an accidental injury to his back which aggravated a previous injury sustained by him in 1954, and that both injuries arose out of and in the course of his employment by appellant. It further found that the injury in November 1965 was not only a separate and distinct injury from that suffered in 1954, but that it was superimposed upon a more gradual aggravation caused by his employment. We agree with the trial court that there is substantial evidence to support this finding.

Raper testified that after six weeks of treatment by Dr. Lester he was able to work only three days in each of the succeeding weeks. Thereafter, he wore a back brace supplied by Dr. Lester on February 11, 1966. He returned to work on February 28 and had not lost any further time from work up to the time of the hearing before the Referee of the Workmen's Compensation Commission on March 23, 1966. Later, on May 24, 1967, Raper said that he tried to work three times but had last worked on March 18, 1966, although company records showed that he had worked a full shift from March 7 to 28, 1966. He said that when he worked he would be hurting so bad when he came home, he couldn't even stay in bed. He also stated that if he made an awkward step, his back would hurt and that he had pain practically all the time.

Although Dr. Lester stated that the increase in Raper's permanent partial disability was slight from the standpoint of anatomical physical impairment, he was of the opinion that Raper was now unable to perform the gainful employment he had performed. On one occasion this doctor stated that if Raper couldn't obtain light work that did not require him to bend or lift with this employer, he should try to find it elsewhere.

Dr. Kenneth Jones testified that Raper had a poor adjustment to his illness and that his mental attitude made recovery difficult. Although Dr. Jones recommended that Raper retire from heavy manual labor, he did not think that he was doing this type of work. He testified, however, that he knew Raper's job required some physical stress. He found Raper's complaints of pain disproportionate to the objective symptoms. While Raper admits that he had not tried to find other work, he says that he would if he were able.

The trial court found "some" substantial evidence to support the Commission's finding. While this evidence might better support a finding of something less than total and permanent disability, we cannot say that fair-minded men could not reach the Commission's conclusion, considering, as the Commission must, appellee's physical condition, age, lack of education, work experience, and other factors affecting his earning capacity. *Glass* v. *Edens*, 233 Ark. 786, 346 S.W. 2d 685; *Wilson & Co., Inc.* v. *Christman*, 244 Ark. 132, 424 S.W. 2d 863; *Arkansas Best Freight* v. *Brooks*, 244 Ark. 191, 424 S.W. 2d 377; *Abbott* v. *C. H. Leavell & Co.*, 244 Ark. 544, 426 S.W. 2d 166.

The judgment is affirmed.

JONES, J., dissents.

J. FRED JONES, Justice. I cannot agree with the majority opinion that the permanency of the appellee's

total disability is sustained by substantial evidence in this case. When a percentage of disability is established by medical testimony relating to functional loss in the use of a part of the body, or of the body as a whole, then certainly the Commission may consider other evidence affecting the claimant's capacity to earn in the same or other employment the wages he was earning at the time of his injury in arriving at his overall percentage of disability.

Total and permanent disability to the body as a whole presupposes that the healing period has ended, that nothing more can be done to relieve the claimant's condition, that he is *totally* disabled from earning in the same or other employment the wages he was earning at the time of his injury, and that such total disability will attend him the rest of the days of his life.

I am unable to find substantial evidence of that situation in the case at bar.

I would reverse.