## HOME INSURANCE COMPANY et al v. Charles R. LOGAN

73-232                                    505 S.W. 2d 25

### Opinion delivered February 11, 1974

*Matthews, Purtle, Osterloh & Weber,* by: *John I. Purtle,* for appellants.

*Harkey and Walmsley,* by: *Bill H. Walmsley,* for appellee.

George Rose Smith, Justice. This is a claim for an increase in permanent partial disability benefits under the workman's compensation act. In 1967 Logan, the claimant, sustained a back injury at work while lifting a piece of furniture. After surgery—a laminectomy and disc fusion—and after the completion of his healing period, Logan was awarded a 20% permanent partial disability. In 1971 Logan's physician, Dr. Millard, found that the disability had increased to 35% as related to the body as a whole. The Commission accepted Dr. Millard's evaluation and increased the award accordingly. The insurance carrier contends that there is no substantial

evidence to sustain a finding that Logan's enhanced disability was attributable to the 1967 injury.

Interpreting the testimony in the light most favorable to the Commission's decision, as is our rule, we find sufficient substantial evidence to support the increased award. We have previously quoted from Larson's treatise on workmen's compensation law the rule that is applicable here: "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct." *Aluminum Co. of America* v. *Williams*, 232 Ark. 216, 335 S.W. 2d 315 (1960). Hence the question is whether Logan's heightened disability could be found upon the evidence to be attributable to the original 1967 injury.

Dr. Millard's testimony amply supports the Commission's award. He stated at the outset that when he released Logan from medical treatment in 1967, he anticipated that the patient might have additional difficulty with his back. "This type of back trouble sometimes does have further trouble. . . . Well, it might arise by just turning over in bed, tying his shoe, it might arise from walking, or standing on his feet eight hours a day working, or something of this sort." Later in his testimony Dr. Millard made such statements as: "It all dates back to the original injury. . . . Now, as far as I'm concerned, the symptoms he was having at that time [1971], and the myelogram findings, subsequently date back eventually to the original injury. I can't pinpoint any one time that this [increased disability] started or happened."

After the termination of Logan's original healing period he obtained work with other employers and was involved in an automobile accident. The appellants argue in effect that Dr. Millard could not say with reasonable medical certainty that Logan's worsened condition was due to the first injury rather than to later incidents.

We cannot say that Dr. Millard's testimony lacks substance. The most serious later incident, upon which the dissenting commissioner relied heavily, occurred about August 1, 1970. Logan consulted Dr. Millard a few days later. In reporting to the insurance carrier Dr. Millard wrote in part: "I saw Mr. Logan again on August 7, 1970, because of a renewal of symptoms. He gave a history of about one week ago lifting a butane tank and twisting to one side and feeling a pop and pain in the back, but particularly with the symptoms being particularly painful in both legs." At the end of his letter the doctor said: "I explained to Mr. Logan that his present symptoms, in my opinion, are due to primarily fatigue from attempting to do too much at one time and not get enough rest. I also advised him to wear his brace, for instance in the afternoon, try to get more rest and try to avoid twisting injuries to his spine. I do not feel that he has any significantly severe injury at the present time."

Thus even at the time Dr. Millard did not attach causative importance to the butane tank incident. Moreover, it was not until the expiration of a full year, during which Logan was usually able to work, that Dr. Millard reached the conclusion that Logan's disability had increased to 35%. Logan himself testified that the pop and pain in his back didn't hurt any more than a lot of other things.

As we have indicated, Dr. Millard anticipated from the beginning that Logan might experience additional back trouble, which could result from such everyday activities as walking, tying a shoe, or turning over in bed. Under the rule that we follow, such aggravations of the original disability are compensable in the absence of an independent intervening cause. We have frequently said that it is the Commission's duty to draw all legitimate inferences in favor of the claimant and to give him the benefit of the doubt in making determinations of fact. *Herman Wilson Lbr. Co.* v. *Hughes,* 245 Ark. 168, 431 S.W. 2d 487 (1968); *Burrow Constr. Co.* v. *Langley,* 238 Ark. 992, 386 S.W. 2d 484 (1965); *Herron Lbr. Co.* v. *Neal,* 205 Ark. 1093, 172 S.W. 2d 252 (1943). In the case

at bar we find adequate substantial evidence to support the Commission's decision.

Affirmed.