INTERNATIONAL PAPER COMPANY *v.* Porter TUBERVILLE

89-192                                      786 S.W.2d 830

Supreme Court of Arkansas
Opinion delivered April 2, 1990
[Rehearing denied May 7, 1990.]

*Bramblett & Pratt*, by: *James M. Pratt, Jr.*, for petitioner.

*Denver L. Thornton,* for respondent.

*Davidson, Horne & Hollingsworth,* by: *Allan W. Horne* and *Mark H. Allison,* for amicus curiae American Insurance Association.

*Robinson, Staley & Marshall,* by: *Stephen P. Carter,* for amicus curiae Arkansas Retail Merchants Association.

*Walter A. Murray,* for amicus curiae Arkansas Self-Insured's Association.

DAVID NEWBERN, Justice. In 1982, the respondent, Porter Tuberville, requested an increase in a permanent disability award he received in 1973 from the Arkansas Workers' Compensation Commission (commission). The commission denied the increase. This case has been before the Court of Appeals three times. Each time the court has reversed the commission. *Tuberville* v. *International Paper Co.,* 28 Ark. App. 196, 771 S.W.2d 805 (1989); *Tuberville* v. *International Paper Co.,* No. CA 87-134 (op. del. November 4, 1987) (not designated for publication); *Tuberville* v. *International Paper Co.,* 18 Ark. App. 210, 711 S.W.2d 840 (1986).

We granted review of the most recent decision because the petitioner, International Paper Company (IP), claims the court of appeals misapplied Ark. Code Ann. § 11-9-713 (1987). It is contended that the court of appeals should not have reversed the commission's determination that Tuberville's increased disability was due to the aging process rather than changes in his physical condition resulting from his prior injury.

Section 11-9-713(a) governs the reopening of workers' compensation claims and provides as follows:

> Except where a joint petition settlement has been approved, the commission may review any compensation order, award, or decision. This may be done at any time within six (6) months of termination of the compensation period fixed in the original compensation order or award, upon [the] commission's own motion or upon the application of any party in interest, on the ground of a change in

physical condition or upon proof of erroneous wage rate. Upon the review the commission may make an order or award terminating, continuing, decreasing, or increasing for the future the compensation previously awarded, subject to the maximum limits provided for in this chapter.

The question presented to the appellate court reviewing the commission's decision is not whether the evidence would support findings contrary to those made by the Commission, but whether the evidence supports the findings made by the Commission. *Reynolds Mining Co.* v. *Raper*, 245 Ark. 749, 434 S.W.2d 304 (1968). Even if the Commission's decision is against the preponderance of the evidence, we will not reverse where its decision is supported by substantial evidence. *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980).

When a worker's primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct. *Home Insurance Co.* v. *Logan,* 255 Ark. 1036, 505 S.W.2d 25 (1974).

In this case, Tuberville injured his back on two occasions, October 24, 1969, and October 22, 1970, while working for IP. Dr. Harold Chakales, Tuberville's physician, rated Tuberville's anatomical impairment at 25 percent to the body as a whole. The Commission awarded permanent partial disability benefits of 55 percent in 1972. Tuberville did not return to work. In 1984, Dr. Chakales increased Tuberville's anatomical impairment rating to 40 percent to the body as a whole, and Tuberville requested an increase in his disability award from the Commission.

Dr. Chakales' deposition formed the basis for the commission's decision denying the request. Pertinent parts of the doctor's testimony bearing upon his most recent examination of Tuberville follow:

Q   Tell me what stenosis is?

A   Narrowing or constriction of the spinal column. And I performed a lumbar myelogram, which also showed

evidence of the spinal stenosis and suggestion of recurrent disc at L4-5 and L5-S1.

Q   Was this a new condition?

A   I think this is a progression of the preexisting condition.

Q   Tell us, then, what you did.

A   Well, I sent him home and told him to think about it, whether or not he wanted to have any surgery. If he was hurting a lot and he wished to, we would schedule him for a decompression laminectomy because of the spinal stenosis. What happened is, that over a period of time as he got older, the fact that he had had the previous surgery with the normal progression of aging process, there is actually a shrinking of the spinal cord, causing more pressure on the spinal cord and the nerve. This will cause a spinal stenosis.

\*    \*    \*    \*

Q   The location of the 1982 surgery is the same location of the surgery back in '71?

A   Correct.

Q   Exactly the same place?

A   Correct.

Q   The problems he had back in '71, we know were job related.

A   Yes, sir.

Q   Did he give you any history of a particular incident that would cause the condition you found in him when you did this recent surgery?

A   No.

Q   What would be your opinion as to what would put him in that situation?

A   General, gradual process of aging, I would say.

Q   Someone in Mr. Tuberville's condition, having had the injury he had back in 1970 and having had the removal of the disc back in '71 would be a real candidate to wake up in the shape he was in in '82?

A   Correct.

Q   And that would be because, as you say, the aging process?

A   Correct.

*   *   *   *

A   I assume what happened between '77 until '82, that he has stabilized and he had probably learned to cope with his problem, but then something triggered off and he started getting more acute.

Q   Do you have any idea what would trigger it?

A   Mother Nature—you know, aging.

■   To reverse a decision of the commission, the appellate court must be convinced that fair minded persons, with the same facts before them, could not have reached the conclusion arrived at by the commission. *St. Michael Hospital* v. *Wright*, 250 Ark. 539, 465 S.W.2d 904 (1971).

The commission interpreted Dr. Chakales' testimony as determining that Tuberville's change in physical condition was caused by the natural course of aging. The commission wrote:

> The real issue in this case is the cause of the claimant's subsequent problems. If the problems were caused as a natural probable result of the original injury then the claimant has established a causal connection between his change in physical condition and the original injury. However, if the subsequent problems are caused by the natural process of aging, then they are not compensable. In order for a worker's disability to be compensable there must be a causal connection between the accident and a risk which is reasonably incident to the employment. *Gerber Products* v. *McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985). The process of aging is not a risk

reasonably incident to employment; rather, it is an inevitable part of each individual's life. Therefore, physical problems caused by the natural process of aging are not compensable under the workers' compensation law of this state. To hold otherwise would literally open the door for any claimant who has ever received an award of workers' compensation benefits to reopen his case and receive additional benefits based simply upon the process of aging.

In its opinion reversing the commission, the court of appeals wrote:

The rule applicable in this case was stated as follows in *Home Insurance Co.* v. *Logan*, 255 Ark. 1036, 505 S.W.2d 25 (1974):

When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.

*Logan*, 255 Ark. at 1037 [505 S.W.2d at 26]. Dr. Chakales's testimony clearly expresses his opinion that the appellant's worsened condition resulted from the natural process of aging *acting upon the appellant's prior, compensable injury.* Unless the testimony is read wholly out of context, no other conclusion is possible. We hold that fairminded persons with these facts before them could not conclude that the appellant's worsened condition was attributable entirely to the natural process of aging, and that the Commission's finding to that effect is not supported by substantial evidence. [Emphasis in original.]

The question in this case arises in a context different from the usual one in which it must be determined whether there is substantial evidence to support the decision of the Arkansas Workers' Compensation Commission. We do not have competing statements of witnesses or documents. The only evidence under consideration is the deposition testimony of Dr. Chakales. It was apparent to the court of appeals, as it is apparent to us, that the commission incorrectly interpreted the only evidence before it as

showing that the increased impairment to Tuberville was due solely to the aging process. The court of appeals reviewed the testimony and held that fair minded persons could not read it and conclude anything but that it was the industrial injury combined with the aging process which caused the expenses for which compensation is being sought.

The unanimous decision of the court of appeals panel was correct. Dr. Chakales's testimony cannot be read without noting his specific statement that it was "the fact that he had had the previous surgery with the normal progression of the aging process" which caused the spinal stenosis resulting in surgery and that the condition was not new but was a progression of the "preexisting condition."

When the entire deposition of Dr. Chakales is read, it becomes even more apparent that fair minded persons could not conclude he attributed Tuberville's condition necessitating the surgery to anything other than the previous condition of his back which was the direct result of the injury he suffered years ago.

Throughout his testimony Dr. Chakales spoke of the previous surgery he had done as the result of the injury Tuberville had received. It is impossible to read the testimony and conclude that aging alone was the cause of the current need for compensation. In his cross examination of the doctor, counsel for IP, for good reason, did not ask whether the effect of the aging process of which the doctor spoke would have produced Tuberville's present condition absent the previous injury and resulting surgery.

In arguing this case, IP has raised the spectre of any previously injured employee being compensated merely because the aging process common to all may cause medical problems. We make no such absurd decision here. We hold that the commission was mistaken because we can find no support for its interpretation of the evidence before it. The only evidence showed clearly that the claim was predicated upon a showing that the increased disability was a natural consequence flowing from the previous injuries.

We affirm the decision of the court of appeals and remand the case for further remand to the commission for orders consistent with this opinion.

HOLT, C.J., HAYS and TURNER, JJ., dissent.

JACK HOLT, JR., Chief Justice, dissenting. The majority correctly states that the standard of review in this case is whether the evidence supports the findings made by the Commission, not whether the evidence would support findings contrary to those made by the Commission, *Reynolds Mining Co. v. Raper*, 245 Ark. 749, 434 S.W.2d 304 (1968), and that even if the decision of the Commission is against the preponderance of the evidence, we will not reverse where its decision is supported by substantial evidence. *Hawthorne v. Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980).

Additionally, they acknowledge that in order to reverse a decision of the Commission, the appellate court must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *St. Michael Hospital v. Wright*, 250 Ark. 539, 465 S.W.2d 904 (1971).

However, after capably reciting these rules, the majority reverses the Commission's holding in total disregard of the substantial evidence supporting their decision. In effect, the majority substitutes its interpretation of Dr. Chakales's deposition testimony in place of the Commission's findings, thereby controverting the applicable standard of review.

The Commission interpreted Dr. Chakales's testimony as determining that Tuberville's change in physical condition was caused by the natural course of aging. In analyzing this issue, the Commission stated:

> The real issue in this case is the *cause* of the claimant's subsequent problems. If the problems were caused as a natural probable result of the original injury then the claimant has established a causal connection between his change in physical condition and the original injury. However, if the subsequent problems are caused by the natural process of aging, then they are not compensable. In order for a worker's disability to be compensable there must be a causal connection between the accident and a risk which is reasonably incident to the employment. *Gerber Products v. McDonald*, 15 Ark. App. 226, 691

S.W.2d 879 (1985). The process of aging is *not* a risk reasonably incident to employment; rather, it is an inevitable part of each individual's life. Therefore, physical problems caused by the natural process of aging are not compensable under the workers' compensation law of this state. To hold otherwise would literally open the door for any claimant who has *ever* received an award of workers' compensation benefits to reopen his case and receive additional benefits based simply upon the process of aging.

The majority categorically rejects the Commission's findings by stating that:

. . . fair-minded persons could not conclude he [Dr. Chakales] attributed Tuberville's condition necessitating the surgery to anything other than the previous condition of his back which was the direct result of the injury he suffered years ago.

\* \* \* \*

It is impossible to read the testimony and conclude that aging alone was the cause of the current need for compensation.

However, the portions of Dr. Chakales's testimony that the majority includes in its opinion clearly indicate that the Commission had substantial evidence upon which to base its finding that Tuberville's subsequent problems were caused by the natural process of aging. In the emphasized portions of his testimony, Dr. Chakales affirmatively stated three times that the general, gradual, and natural process of aging was the cause of Tuberville's change in physical condition:

Q What would be your opinion as to what would put him in that situation?

A General, gradual process of aging, I would say.

Q Someone in Mr. Tuberville's condition, having had the injury he had back in 1970 and having had the removal of the disc back in '71, would be a real candidate to wake up in the shape he was in, in '82?

A Correct.

Q   And that would be because, as you say, the aging process?

A   Correct.

\*   \*   \*   \*

A   I assume what had happened between '71 until '82, that he had stabilized and he had probably learned to cope with his problem, but then something triggered it off and then he started getting more acute.

Q   Do you have any idea what would trigger it?

A   Mother Nature—you know, aging.

Thus, it is apparent that the Commission's decision was based on substantial evidence that supported its position and that Dr. Chakales himself attributed Tuberville's condition to the aging process, which contradicts the majority's position that the only cause of Tuberville's present condition was the previous condition of his back.

The majority also criticizes the appellant, International Paper Company (IP), for not asking Dr. Chakales, upon cross-examination, whether the effect of the aging process of which he spoke would have produced Tuberville's present condition absent the previous injury and resulting surgery.

The criticism would be better directed at Tuberville, the appellee, and his failure to clearly ascertain the cause of the condition of which he complains because he had the burden of proving a change in physical condition pursuant to Ark. Code Ann. § 11-9-713(a) (1987). In fact, it is upon cross-examination that IP asked:

Q   Did he give you any history of a particular incident that would cause the condition you found him in when you did this recent surgery?

A   No.

The majority has cited the most pertinent portions of Dr. Chakales's testimony, which refer to Tuberville's preexisting condition and the cause for his present condition. Yet, the evidence relied upon by the Commission is substantial, and fair-

minded persons could have reached the conclusion arrived at by the Commission. Consequently, the majority has misapplied the standard applicable to a reversal of the Commission's decision, and the judgment should be reversed.

HAYS and TURNER, JJ., join in this dissent.