(937 P.2d 1245)

No. 75,703

MICHAEL G. NANCE, *Claimant/Appellant*, v. HARVEY COUNTY, *Respondent/Appellee*, and NORTHWESTERN NATIONAL CASUALTY, *Insurance Carrier/Appellee*.

Opinion filed May 2, 1997.

*Steven L. Foulston*, of Wichita, for the appellant.

*James A. Cline*, of Wichita, for the appellee.

Before KNUDSON, P.J., PIERRON, J., and PADDOCK, S.J.

PIERRON, J.: Michael G. Nance appeals from an order of the Workers Compensation Board (Board) denying his request for review and modification pursuant to K.S.A. 44-528 and finding he failed to prove by a preponderance of the evidence that his worsened condition was related to his industrial injury of April 20, 1990. We reverse.

The parties do not dispute that Nance was injured while working within the course and scope of his employment with Harvey County on April 20, 1990. Northwestern National Insurance Group is Harvey County's insurer.

Harvey County paid Nance compensation for temporary total disability and medical treatment/benefits. On February 14, 1994, the administrative law judge (ALJ) found that Nance sustained a

9% permanent partial general bodily disability as a result of his injuries. Nance requested a review by the Board. On July 28, 1994, the Board found Nance had sustained only a 3.5% permanent partial impairment to the body as a whole on a functional basis.

Nance appealed to this court, arguing only against the constitutionality of the Board. Pursuant to *Sedlak v. Dick*, 256 Kan. 779, 887 P.2d 1119 (1995), we sustained Nance's appeal, vacated the Board's decision, and remanded the case to the newly constituted Board for a rehearing. *Nance v. Harvey County*, unpublished opinion No. 72,462, filed September 22, 1995. On November 9, 1995, the Board adopted its previous decision that Nance sustained a 3.5% permanent partial functional impairment.

During the pendency of his first appeal, Nance filed a motion for post-award medical treatment on July 21, 1994. The ALJ granted Nance's motion, and he received treatment from Dr. Anthony G.A. Pollock.

On January 27, 1995, Nance filed a motion for review and modification, alleging that his functional impairment and work disability had increased since the original award. Nance submitted the testimony of Dr. Pollock and Jerry Hardin for supporting evidence. Pollock testified concerning Nance's functional impairment. Hardin testified concerning Nance's loss of ability to perform work in the open labor market and ability to earn comparable wages. Harvey County did not submit any evidence. The ALJ issued an award increasing Nance's permanent partial general bodily disability to 50%, finding: "The only evidence offered on the issues herein is that offered by claimant. The opinions of Dr. Anthony G. A. Pollock and of Mr. Jerry D. Hardin are found to be reasonable, are not improbable, are not contradicted and therefore are adopted as fact."

Harvey County filed for review before the Board. The Board reversed the award, concluding that Nance failed to prove by a preponderance of credible evidence that his worsened condition was related to the injury he suffered on April 20, 1990, and denied his request for review and modification.

Nance argues the Board committed reversible error when it concluded he failed to prove by a preponderance of the evidence that his worsened condition was related to this injury on April 20, 1990.

The 1993 workers compensation amendments limited review of all orders issued after October 1, 1993, to questions of law. K.S.A. 44-556(a). Whether the Board's findings of fact are supported by substantial competent evidence (K.S.A. 77-621[c][7]) is a question of law. See *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, Syl. ¶ 1, 913 P.2d 612 (1995).

K.S.A. 44-556 provides that workers compensation appeals are subject to the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The relevant scope of review is set forth in K.S.A. 77-621(c)(7):

"(c) The court shall grant relief only if it determines any one or more of the following:

. . . .

(7) The agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act."

In a workers compensation appeal, substantial evidence is "evidence possessing something of substance and relevant consequence and carrying with it fitness to induce conviction that the award is proper, or furnishing substantial basis of fact from which the issue tendered can be reasonably resolved." *Angleton v. Starkan, Inc.*, 250 Kan. 711, Syl. ¶ 3, 828 P.2d 933 (1992). Additionally, this court may not reweigh the evidence presented at the agency hearing or determine the weight or credibility of the witnesses' testimony. See *City of Wichita v. Employment Security Bd.*, 13 Kan. App. 2d 729, 733, 779 P.2d 41 (1989).

"In a workers compensation case, if evidence is presented that is uncontradicted, and not improbable, unreasonable, or shown to be untrustworthy, the finder of fact cannot disregard this evidence. Uncontradicted evidence should generally be regarded as conclusive. *Demars v. Rickel Manufacturing Corporation*, 223 Kan. 374, 380, 573 P.2d 1036 (1978)." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, 285, 887 P.2d 140 (1994).

Harvey County argues our standard of review is based upon a review of a negative finding. It indicates the Board found Nance had failed to sustain his burden of proof, namely, demonstrating

by a preponderance of the evidence that his worsened condition was related to his workers compensation injury. As a result, Harvey County contends our standard of review is as follows:

" 'The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge [now the Workers Compensation Board] cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed.' [Citation omitted.]" *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

K.S.A. 44-528 permits modification of awards in order to conform to changed conditions. This statute was intended to permit modification of awards when the condition of an injured employee either improves or worsens after the original hearing and award. See *Brandt v. Kansas Workers Compensation Fund,* 19 Kan. App. 2d 1098, Syl. ¶ 2, 880 P.2d 796, *rev. denied* 256 Kan. 994 (1994). A modification for changed conditions cannot be made without comparing a claimant's condition at the time of the award with the condition at the time the modification is sought. *Gile v. Associated Co.*, 223 Kan. 739, 741, 576 P.2d 663 (1978). K.S.A. 1996 Supp. 44-501(a) provides that a claimant shall have the burden to prove the right to an award of compensation and to prove the various conditions on which that right depends.

In overruling Nance's award from the ALJ, the Board stated:

"The only medical evidence dealing with claimant's increased symptomatology comes from Dr. Anthony Pollock. Dr. Pollock, a board-certified orthopedic surgeon, had the opportunity to examine and treat claimant both for the 1990 injury and for the 1994 condition. While he noted the MRIs performed on claimant in October, 1994 showed a definite increase in the disc herniation at L5-S1, Dr. Pollock had significant difficulty attributing this progressive condition to claimant's 1990 injury. He was asked specifically the cause of this increased condition and testified at various places in the transcript that the condition was caused by progressive degenerative disc disease, or possibly from the natural aging process; in another place he testified that he did not know what the cause was but he felt it may be the natural aging process; and finally he testified that he was not sure if it was caused by the injury or the natural aging process. The Appeals Board finds Dr. Pollock cannot relate claimant's worsened condition to the 1990 work-related injury."

We note there appears to be no evidence in the record that Dr. Pollock treated Nance in 1990. It was Dr. Poole who treated Nance in 1990. Pollock first saw Nance on June 22, 1994.

Nance argues the *only* testimony presented on this issue was that of Dr. Pollock, which supported his position. Nance contends Dr. Pollock testified that: (1) there was no evidence that Nance had any injury to, or aggravation of, his lower back after April 20, 1990; (2) Nance's lower back condition, *i.e.* herniation of his L5-S1 disc and accompanying degenerative disc disease, had significantly worsened since Dr. Poole saw Nance in 1990; (3) Nance experienced the same problems now that he had had after his injury except the condition was worse; and (4) the herniated disc and condition of Nance's lower back were expected to deteriorate and that was most likely what had occurred. Nance argues this testimony was not shown to be unreliable or unreasonable and, therefore, the Board was required to adopt it since it was uncontroverted.

Harvey County responds that Dr. Pollock's testimony was insufficient to sustain Nance's burden of proof. It argues the Board did not arbitrarily disregard undisputed evidence and therefore the decision should be affirmed based on the Board's negative finding. When Dr. Pollock saw Nance on June 22, 1994, over 4 years had elapsed since Nance's injury in 1990 and over 1 year since Nance had started work at Ritchie Building. At Ritchie, Nance performed general cleanup and labor, including bending, squatting, stooping, repetitive motions with a broom, and picking up trash.

Harvey County cites other evidence as well. Dr. Pollock testified that the objective signs of Nance's increased injury were not impressive. Dr. Pollock said that during the examination, Nance's major complaint was constant lower back pain, but he was able to stand up quickly from a chair with relatively little discomfort and could move from a lying position to the sitting position with his legs straight in front of him. Nance had no weaknesses that Dr. Pollock could demonstrate and Nance's reflexes did not suggest any nerve root pressure. Dr. Pollock also testified that Nance's subjective complaints were inconsistent with the MRI finding in that Nance complained of right leg and right side pain, but the

MRI indicated that 99% of the time the pain should be on the left side.

Harvey County strongly emphasizes Dr. Pollock's testimony that he was unable to state with absolute certainty what caused the changes or symptoms. Dr. Pollock agreed that Nance's back problem could have resulted from an injury, the natural aging process, or a combination of those things. Harvey County also points out that Dr. Pollock gave Nance a 7% permanent partial impairment rating, the same rating given by Dr. Schlachter in Nance's original award.

In its brief, Harvey County repeats all the Board's findings that the record was replete with evidence of Nance's misrepresentation, lack of effort, and several doctors' testimony that Nance was "working the system." In its original award, the Board found:

"The Appeals Board finds that claimant's attitude, potential misrepresentation and apparent lack of effort creates an unreliable record from which to assess the claimant's abilities in either performing work in the open market or earning comparable wages. The opinion of two qualified treating physicians that claimant was intentionally attempting to mislead them, coupled with the security testimony provided by Barbara Steil of Silver Hawk Investigators and claimant's attempted manipulation when tested on the Cybex machine, creates a record so clouded as to make it impossible to assess what, if any, work disability may or may not exist in this matter."

It is undisputed that Nance's condition has worsened. Dr. Pollock testified that a comparison of the 1990 MRI and the 1994 MRI showed Nance's condition had significantly worsened. The Board did not arbitrarily disregard this evidence, but rather specifically noted that a comparison of the MRIs "showed a definite increase in disc herniation." The Board hung its hat on the fact that Dr. Pollock had significant difficulty attributing the progressive condition to Nance's 1990 injury. As a result, Harvey County argues the lack of causation is clearly supported by Dr. Pollock's testimony.

Nance maintains the Board erred in finding he had not proved that the worsening of his lower back condition was the natural and probable consequence of his injury of April 20, 1990. In *Adamson*

*v. Davis Moore Datsun, Inc.*, 19 Kan. App. 2d 301, Syl. ¶ 6, 868 P.2d 546 (1994), the court stated:

"When a primary injury under the Workers Compensation Act is shown to have arisen out of the course of employment every natural consequence that flows from the injury, including a new and distinct injury, is compensable if it is a direct and natural result of the primary injury."

Under the direct and natural consequence rule, Nance cites several Kansas cases where the courts have held that an award for permanent partial general bodily disability was proper where the evidence supported the trial court's finding that the injury to the claimant's leg caused not only disability of the leg but also a disability of the back which was a direct and natural consequence of the physical damage to the leg. See *Reese v. Gas Engineering & Construction Co.*, 219 Kan. 536, Syl. ¶ 4, 548 P.2d 746 (1976); *Chinn v. Gay & Taylor, Inc.*, 219 Kan. 196, Syl. ¶ 5, 547 P.2d 751 (1976); *Bergemann v. North Central Foundry, Inc.*, 215 Kan. 685, 687, 527 P.2d 1044 (1974); see also *Berger v. Hahner, Foreman & Cale, Inc.*, 211 Kan. 541, 506 P.2d 1175 (1973) (recovery for traumatic neurosis traceable to eye injury). But see *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. 260, Syl. ¶ 1, 505 P.2d 697 (1973) (no recovery where facts disclose a new and separate accidental injury caused the increased disability).

Nance cites several cases interpreting the natural and probable consequence rule, the majority of which are factually distinguishable because they concern a second or subsequent injury.

In *Mendota Twp. High Sch. v. Indus. Comm'n*, 243 Ill. App. 3d 834, 612 N.E.2d 77 (1993), the court stated the general principle that the fact that other incidents, whether work related or not, may have aggravated a compensable condition are irrelevant as long as they do not constitute intervening causes. See *Intermountain Health v. Bd. of Review*, 839 P.2d 841, 847 (Utah App. 1992); *Blackwell v. Bostitch Div. of Textron*, 591 A.2d 384 (R.I. 1991) (subsequent injury or aggravation is compensable so long as it is clear that the real operative factor is the progression of the compensable injury); *Home Ins. Co. v. Logan*, 255 Ark. 1036, 1038, 505 S.W.2d 25 (1974) (aggravations of original disability from

everyday activities such as walking, tying a shoe, or turning over in bed are compensable in absence of an independent intervening cause).

Of importance, Nance cites *International Paper Co. v. Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990). In *Tuberville*, the claimant injured his back in 1969 and again in 1970. A physician found the claimant had an anatomical impairment at 25% to the body as a whole. In 1972, the Arkansas Workers' Compensation Commission (AWCC) awarded the claimant permanent partial disability benefits of 55%. In 1984, the claimant's physician increased the anatomical impairment to 40% as a whole, and the claimant requested an increase in the disability award. The AWCC concluded that the claimant's increased or changed physical condition was caused by the natural course of aging. The claimant's physician testified that the claimant's condition was a progression of the pre-existing condition. The physician also testified the claimant's condition resulted from a "gradual process of aging", "the aging process," or "Mother Nature—you know, aging." 302 Ark. at 25-27. The AWCC stated:

" 'The real issue in this case is the cause of the claimant's subsequent problems. If the problems were caused as a natural probable result of the original injury then the claimant has established a causal connection between his change in physical condition and the original injury. However, if the subsequent problems are caused by the natural process of aging, then they are not compensable. In order for a worker's disability to be compensable there must be a causal connection between the accident and a risk which is reasonably incident to the employment. *Gerber Products v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879 (1985). The process of aging is not a risk reasonably incident to employment; rather, it is an inevitable part of each individual's life. Therefore, physical problems caused by the natural process of aging are not compensable under the workers' compensation law of this state. To hold otherwise would literally open the door for any claimant who has ever received an award of workers' compensation benefits to reopen his case and receive additional benefits based simply upon the process of aging.' " 302 Ark. at 27-28.

The Arkansas Court of Appeals reversed the AWCC's decision, stating that the physician's testimony

" 'clearly expresses his opinion that the appellant's worsened condition resulted from the natural process of aging *acting upon the appellant's prior, compensable*

*injury.* Unless the testimony is read wholly out of context, no other conclusion is possible. We hold that fair-minded persons with these facts before them could not conclude that the appellant's worsened condition was attributable entirely to the natural process of aging, and that the Commission's finding to that effect is not supported by substantial evidence. [Emphasis in original.]' " 302 Ark. at 28.

The Arkansas Supreme Court in *Tuberville* agreed with the Court of Appeals that the AWCC erred in interpreting the only evidence before it as showing that claimant's increased impairment was due solely to the aging process. The court stated the Court of Appeals reviewed the testimony and correctly held that fair-minded persons could not read it and conclude anything but that it was the industrial injury combined with the aging process which caused the expenses for which compensation was being sought. The court found the only evidence showed clearly that the claim was predicated upon a showing that the increased disability was a natural consequence flowing from the previous injuries. As a side note, the *Tuberville* court disagreed with the AWCC's opening the flood gates argument. 302 Ark. at 28-29.

The dissent in *Tuberville* would have upheld the decision of the AWCC. The dissent determined that based on the evidence, fair-minded persons could have reached the conclusions arrived at by the AWCC. The dissent criticized the majority for focusing on the employer's failure to inquire of the claimant's physician whether the aging process would have produced the claimant's condition absent the previous injury and resulting surgery. Rather, the dissent switched blame to the claimant for failing to clearly ascertain the cause of the change in his physical condition. 302 Ark. at 30-33, (Holt, C.J., dissenting).

Applying *Tuberville*, Nance contends the review and modification process would be rendered meaningless if a claimant was required to prove that the natural aging process did not cause or contribute to the deterioration of a compensable injury or condition. He states that even if the natural aging process has played some part in his worsened condition, it would still be covered under the natural and probable consequence rule.

This case can be reduced to simple terms. First, it is undisputed that Nance's compensable injury has worsened. In obtaining his

original award, Dr. Pirner diagnosed Nance on April 24, 1990, as having a cervical strain/sprain and a lumbar strain/sprain with degenerative disc disease at L5-S1, confirmed by x-ray. This diagnosis was later verified by Dr. Poole's MRI in May 1990, and Dr. Marsh's MRI in August 1990. In 1994, Dr. Pollock performed an MRI which showed Nance's degenerative disc disease had significantly worsened.

Second, there was no evidence submitted by Harvey County that Nance's increased degenerative disc disease resulted from an independent/intervening cause or injury. 1 Larson, The Law of Workmen's Compensation § 13.11(a), p. 3-609 (1996), provides a relevant example of where an initial medical condition itself progresses into complications more serious than the original injury—the added complications obviously being compensable.

"Moreover, once the work-connected character of any injury, such as a back injury, has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause."

In *Jackson v. Stevens Well Service*, 208 Kan. 637, 493 P.2d 264 (1972), the claimant suffered an injury to his hands resulting in an amputation of the first and second fingers of the right hand, a partial amputation of his right thumb, and an amputation of the first finger of his left hand. A few months after the accident the claimant developed bicipital tendinitis in the right shoulder. Although there was medical testimony that the shoulder injury was related to the accident, the trial court found the shoulder injury was temporary in nature and resulted from the injury to the hands. On appeal from a denial of compensation beyond the scheduled injury, the *Jackson* court reversed and directed an award be entered for temporary total disability. The court then set forth the natural and probable consequence rule cited above in *Adamson*, 19 Kan. App. 2d 301, Syl. ¶ 6.

In *Stockman v. Goodyear Tire & Rubber Co.*, 211 Kan. at 262-63, the court reviewed the record to determine if it disclosed sufficient competent evidence on which the trial court could base a finding that the claimant suffered a new injury rather than a con-

tinuation of the first injury. In that case the claimant injured his back at work. One day after being released to return to work, the claimant reinjured his back at home. The court found the second injury was a new injury despite the fact that the same body part was injured only one day after claimant was considered well enough to return to work.

Of relevance here, the *Stockman* court limited the *Jackson* decision to a situation that is applicable to the case at bar:

"The rule in *Jackson* is limited to the results of one accidental injury. The rule was not intended to apply to a new and separate accidental injury such as occurred in the instant case. The rule in *Jackson* would apply to a situation where a claimant's disability gradually increased from a primary accidental injury, but not when the increased disability resulted from a new and separate accident." 211 Kan. at 263.

In the instant case there was undisputed testimony that the primary injury had worsened, quite likely through the normal aging process and the passage of time. The worsening of a claimant's compensable injury, absent any intervening or secondary injury, is a natural consequence that flows from the injury. It is a direct and natural result of a primary injury. Since Nance's worsening back condition is merely a continuation of his original injury, causation is not an issue.

Dr. Pollock's wavering provides nothing more than testimony that he does not know what caused Nance's condition to worsen. The record does not indicate there is substantial evidence to support the Board's decision. Under a negative finding standard of review, the Board may have recognized the evidence that Nance's condition had worsened, but incorrectly disregarded the fact that there was no evidence of an intervening or secondary cause. This evidence is sufficient to entitle Nance to workers compensation benefits for his increased injury.

We reverse the Board's decision and reinstate the ALJ's award of July 19, 1995.

Reversed.