MAVERICK TRANSPORTATION *v.* David BUZZARD and J.B. Hunt Trucking Company

CA 99-839                                          10 S.W.3d 467

Court of Appeals of Arkansas
Division II
Opinion delivered February 9, 2000
[Petitiion for rehearing denied March 8, 2000.]

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.* and *Betty J. Demory*, for appellant.

*Dover & Dixon, P.A.*, by: *Joseph H. Purvis*, for appellee.

JOHN F. STROUD, JR., Judge. Maverick Transportation appeals a decision of the Workers' Compensation Commission holding Maverick liable for benefits awarded to its employee David Buzzard as a result of a left-knee injury suffered on February 6, 1998. In 1990 Mr. Buzzard had sustained a noncompensable injury to the same knee; in 1996 J. B. Hunt Trucking Company had accepted another injury to the knee as compensable. Maverick contends on appeal that no substantial evidence supports the Commission's finding that Mr. Buzzard sustained either a new injury and/or aggravation of his preexisting condition for which appellant is liable; instead, Maverick contends that the injury was a recur-

rence of long-standing problems with his left knee. We disagree with Maverick and affirm.

■ An aggravation is a new injury resulting from an independent incident. *Farmland Ins. Co. v. DuBois*, 54 Ark. App. 141, 923 S.W.2d 883 (1996). A recurrence is not a new injury but merely another period of incapacitation resulting from a previous injury. *Atkins Nursing Home v. Gray*, 54 Ark. App. 125, 923 S.W.2d 897 (1996). A recurrence exists when the second complication is a natural and probable consequence of a prior injury. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). Only where it is found that a second episode has resulted from an independent intervening cause is liability imposed upon the second carrier. *Id.*

Appellant points to appellee's testimony and the deposition testimony of Dr. Gary Miller as proof that the incident on February 5, 1998, was a recurrence of long-standing problems with appellee's left knee. Appellant argues that the February 1998 incident is a "second period of medical complication" following the 1996 injury accepted by J. B. Hunt as compensable, that there was no accident or independent intervening cause, and that the 1998 injury was a natural and probable result of the 1996 injury. He concludes that J. B. Hunt therefore remains liable.

■ The standard of review on appeal is well-settled. In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, the appellate court reviews the evidence in the light most favorable to the Commission's findings and affirms if the findings are supported by substantial evidence. *Woodall v. Hunnicutt Constr.*, 67 Ark. App. 196, 994 S.W.2d 490 (1999). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case de novo. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). We will not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusion arrived at by the Commission. *Id.*

At the hearing before the administrative law judge, appellee testified to the following events and medical treatments for his left knee. The knee was first injured during a neighborhood football game in 1990. At that time he was a salesman for Lowe's. Dr. Gary Miller performed arthroscopic surgery for a partial tear of the anterior cruciate ligament, which took about seven or eight months to heal. Appellee had no problems with his knee a year later, or for the next five years. He worked about three years at a paper company where he moved bags of paper on skids and he was constantly bending and squatting. On his next job, delivering pizzas, he had no problems climbing stairs or working in the kitchen.

J. B. Hunt hired appellee as a truck driver in July 1996. In November 1996 he "blew out" the same knee in a compensable injury; he twisted his knee when he fell from the truck bed and hit the ground. He returned to Dr. Miller, who again performed arthroscopic surgery for a partial tear of the ACL. When Dr. Miller released him to light duty in February 1997, he began driving a shuttle bus for Hunt. He did not return to Dr. Miller for his two-month follow-up appointment.

In April 1997 appellee was released to work without restrictions by Dr. Szabo of Workwise in Alabama, where appellee was tested on such tasks as climbing a ladder and squatting. Dr. Szabo released appellee to work without restrictions, and he went back to driving flatbeds, doing exactly what he had done before. He missed no further work because of his knee through December 1997, when he left his employment with Hunt.

Appellee testified that he was having no problems with his knee when he left, but he kept a leg brace in the truck "just in case." On a written application for employment with Maverick he listed the November 1996 injury with J. B. Hunt as an "injury or accident requiring medical attention," and he told a telephone interviewer about the 1990 football injury. A doctor examined his knee in a medical evaluation for Maverick; it was her opinion that appellee was able to perform the essential functions of a road driver without any reasonable accommodation. He went to work for Maverick in January 1998 after taking the holidays off.

The incident here at issue occurred at a steel plant in Middletown, Ohio, on February 6, 1998, when appellee was trying to

secure a load on his truck. He was in a "squatted down reaching" position, leaning at an awkward angle with all his weight on his left knee. With his left hand he reached for a chain between a seven-foot coil and the side of the bed; he pulled the chain through, hooked it, and tightened the ratchet binder. Then he started to straighten up and heard a pop. He stated that the pain was similar to what he had experienced before, and that it hurt "real bad"; he could not walk on it and could not operate the clutch.

Appellee testified that between February 1997 and February 1998 he continued to have "play" in his left knee and that he was careful how he used it. He kept his brace in the truck to wear on occasions when his knee hurt. Before February 6, 1998, he had no problem performing normal duties; this included squatting and standing up afterwards, which he did with careful positioning.

Appellant relies in part upon the following evidence to support its position that the 1998 injury was a natural and probable result of the 1996 injury that J. B. Hunt accepted as compensable. There was no fall in 1998; appellee merely stood up. Appellee did not understand the severity of the 1996 injury, he had instability in sitting afterwards, he did not wish to undergo reconstruction surgery afterwards, he had looseness in the knee, and he wore the brace in the truck when his knee hurt. Dr. Miller wrote in 1997 reports that appellee might have to undergo ACL reconstruction, and he testified that the last injury was a continuation of the same spectrum, an unstable knee, which would have recurring flare-ups and damage as the natural history of an anterior cruciate deficient knee. Dr. Miller also testified that the torn cartilage that appellee had was a natural and probable consequence of the preexisting condition, and that the tear often happened just as a matter of time. Appellant contends that the Commission ignored evidence, including the above, in support of its position.

■ The authority of the Commission to resolve conflicting evidence also extends to medical testimony. *Swift-Eckrich, Inc. v. Brock*, 63 Ark. App. 118, 975 S.W.2d 857 (1998). The Commission is entitled to review the basis for a doctor's opinion in deciding the weight and credibility of the opinion and medical evidence. *Id.* Here, in adopting and affirming the decision of the administrative law judge, the Commission found appellee to be a most credible witness and found the evidentiary testimony of Dr. Miller to be

somewhat confusing. It pointed out that appellee gave Dr. Miller no specific history concerning the nature of the 1998 injury; the doctor knew only that appellee "was working and had another injury." The Commission noted that the doctor had told appellee to return in 1997 if he had problems; that appellee did not return for almost a full year; and that a new diagnosis, torn meniscus cartilage, was a result of the 1998 event. The Commission concluded:

> Based upon the claimant's credible testimony, the claimant's course of conduct and work history following his return to work in March or April 1997 and continuing thereafter, together with the medical evidence, it is herein concluded that claimant's physical problems beginning February 6, 1998, are the result of a new injury and/or aggravation of his pre-existing condition which occurred while working for respondent [appellant].

■ We cannot say that the Commission's conclusion that the 1998 injury was a new injury and/or aggravation of his preexisting condition was not supported by substantial evidence. Therefore, we affirm the Commission's decision and its finding that appellant is liable for the knee injury of February 1998.

Affirmed.

HART, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. While I agree to affirm the Commission's decision, I do so pursuant to Arkansas Code Annotated section 11-9-102(5)(F)(ii)(b), which states:

> If any compensable injury combines with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment, permanent benefits shall be payable for the resultant condition only if the compensable injury is the major cause of the permanent disability or need for treatment.

I affirm because I agree with the Commission's apparent finding that the February 6, 1998 incident is the major cause of David Buzzard's need for treatment.

As the principal opinion indicates, Buzzard sustained a non-compensable injury to his left knee in 1990, and suffered another injury to that knee in 1996 while employed by J.B. Hunt. The record shows that he was released to work without restrictions in April 1997, and that he returned to driving flatbed trucks for Hunt without missing any further work because of his knee. He left employment with Hunt in December 1997, and started working for Maverick Transportation in January 1998 after having fully disclosed his preexisting knee injuries during the pre-employment application/interview process and after having been medically cleared to work as an over-the-road driver. The condition for which his present claim for benefits was made arose from a February 6, 1998 incident that in Buzzard's testimony, which the Commission found credible, occurred when he started to rise from a squatted position while securing a load on his truck. He heard a pop, felt severe pain, and was unable to walk on his left knee or operate the clutch of his truck afterwards.

Before July 1, 1993, the effective date of Act 796 of 1993, Buzzard's claim would have been governed by decisions that simply focused on whether the February 6, 1998 incident was an "aggravation" — meaning a new injury — or a "recurrence" — meaning a continuation of a previous injury. The cases cited by the parties in their briefs reflect that history. If Act 796 of 1993 had not been enacted to include Ark. Code Ann. § 11-9-102(5)(F)(ii)(b), then those cases would be controlling on our decision. However, the Seventy-Ninth General Assembly rendered that body of case law obsolete when it enacted Act 796 during a special session convened for the sole purpose of reforming our workers' compensation law. At Ark. Code Ann. § 11-9-1001 (Repl. 1996), the General Assembly declared:

> It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act.

Arkansas Code Annotated section 11-9-102(5)(F)(ii)(b) was added to the workers' compensation law of Arkansas by Act 796. It is a significant departure from preexisting law pertaining to liability for subsequent conditions and injuries because it does not employ

the aggravation/recurrence distinction characterized by the cases cited in the principal opinion and other decisions. *See Home Ins. Co. v. Logan*, 255 Ark. 1036, 505 S.W.2d 25 (1974); *Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 528 (1963); *Aluminum Co. of America v. Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960); *see also Atkins Nursing Home v. Gray*, 54 Ark. App. 125, 923 S.W.2d 897 (1996); *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). Prior law focused on whether the subsequent condition or injury appeared to constitute a new injury as opposed to continuation of a previous condition or injury. If the subsequent condition or injury was deemed the natural consequence flowing from the previous injury or condition, the employer for the previous injury or condition was deemed liable for benefits based on a finding that the subsequent condition was a recurrence rather than an aggravation. *See International Paper Co. v. Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990); *Bearden Lumber Co. v. Bond, supra*. This analytical process resulted in what the Seventy-Ninth General Assembly deemed an unsatisfactory broadening of the scope and erosion of the purpose of workers' compensation, judging from the legislative declaration of intent for Act 796 found at Ark. Code Ann. § 11-9-1001.

But Act 796 changed the analytical construct. As Ark. Code Ann. § 11-9-102(5)(F)(ii)(b) states, the relevant inquiry now is twofold: (a) did a compensable injury combine with a preexisting disease or condition or the natural process of aging to cause or prolong disability or a need for treatment; and (b) is the compensable injury the major cause of the permanent disability or need for treatment. "Major cause" means more than fifty percent of the cause, and a finding of major cause shall be established according to the preponderance of the evidence. *See* Ark. Code Ann. § 11-9-102(14) (Supp. 1999).

I believe that this twofold analysis is the only legitimate construct for determining the compensability of subsequent incidents for cases arising under Act 796 and that continued reliance on the aggravation/recurrence construct is inappropriate and misleading. Continued use of the aggravation/recurrence construct is inappropriate because of the clear and unambiguous expression of legislative intent at Ark. Code Ann. § 11-9-1001 that all prior case law contrary to or in conflict with any provision of Act 796 is repealed, nullified, and held for naught. And continued use of the aggrava-

tion/recurrence construct is misleading because it would detract from the "major cause" focus that Act 796 commands. I am unable to contemplate how the aggravation/recurrence construct can satisfactorily be superimposed on the major-cause analysis without diminishing the meaning of "major cause." Had the General Assembly intended to continue our reliance on the aggravation/recurrence distinction, it would not have created the "major cause" construct.

Although the Commission did not employ the Act 796 analytical process in deciding that Maverick Transportation is liable for Buzzard's February 1998 knee injury and its consequences, I agree that the Commission reached the proper result nonetheless. Maverick Transportation does not deny that the February 1998 incident combined with Buzzard's preexisting condition to cause the need for treatment. The only question is whether the February 1998 incident was the major cause of the need for treatment. The Commission found Buzzard's testimony credible and discounted that of Dr. Gary Miller in reaching the conclusion that Buzzard's physical problems after February 6, 1998, were caused by the injury of that date. Although the Commission did not use the term "major cause," its opinion leaves no doubt that it deemed the February 6, 1998, incident accountable for more than fifty percent of the cause for Buzzard's need for additional treatment.

Therefore, I join the decision to affirm. Yet I hope that the Commission and counsel for workers' compensation litigants will discontinue employing the outdated — and now plainly invalid — analytical framework that predated Act 796 in future cases involving this kind of dispute.[1]

---

[1] I concede that we have not employed this new analytical process in our post-Act 796 decisions. *See Atkins Nursing Home v. Gray, supra.* Furthermore, I accept a measure of responsibility for our continued use of the invalidated aggravation/recurrence distinction, as I also conceded in my recent dissenting opinion in *Davis v. Old Dominion Freight Line, Inc.,* 69 Ark. App. 74, 13 S.W.3d 171 (2000). Although *Davis* involved a fact situation governed by Ark. Code Ann. § 11-9-102(F)(iii) rather than (ii), Act 796 remains the controlling authority for our decision-making in these claims rather than the case law that existed before July 1, 1993, the date it took effect. By writing this concurring opinion, I hope to alert counsel for workers' compensation litigants that I will look to Act 796 and the analytical process that it prescribes in analyzing future cases.